STATE OF NORTH CAROLINA v. JACKIE RICHARD WEIMER

No. 136

(Filed 15 July 1980)

1. **Criminal Law § 66.10— suggestive pretrial identification at police head-quarters—suppression of in-court identification—improper identification questions by prosecutor—harmless error**

In a prosecution for conspiracy to commit armed robbery and murder committed in the perpetration of an armed robbery wherein the trial court granted defendant's motion to suppress a witness's in-court identification of defendant on the basis of a prior impermissibly suggestive identification at police headquarters, the prosecutor acted improperly in asking the witness on two occasions to look at defendant and to state whether he could identify defendant as the driver of the getaway van; however, defendant was not prejudiced by such impropriety where the trial court in each instance sustained defendant's objection and directed the witness not to answer the question; defense counsel failed to request that the court instruct the jury to disregard the prosecutor's questions; the witness was allowed to give a detailed description of the driver of the van which corresponded to defendant's appearance; and there was strong evidence of defendant's guilt of the crimes charged.

2. **Criminal Law § 91.2— denial of continuance because of pretrial publicity**

The trial court did not err in denying defendant's motion for a continuance based upon publicity surrounding a female accomplice's trial and references to defendant in certain news articles where prospective jurors who indicated they had read or heard about the case stated that they had not formed or expressed an opinion about the case and could render a fair and impartial verdict based on the evidence and the law as presented at trial; and the record fails to show that defendant ever requested the removal for cause of any venireman who eventually sat on the impaneled jury or that defendant exhausted his peremptory challenges before he passed the jury.

State v. Weimer

3. **Criminal Law §§ 66.9, 66.16— pretrial photographic procedure—in-court identification—independent origin—no unnecessary suggestiveness**

The evidence supported the trial court's finding that a witness's in-court identification of defendant's alleged female accomplice as the person who shot a supermarket manager was of independent origin and not tainted by a pretrial identification procedure in which the witness was shown a photograph of the accomplice in the district attorney's office where the witness, a supermarket employee, testified that she heard the manager call for help, heard the sound of two gunshots, and saw a person leave the manager's office and walk out of the store; this person faced the witness at all times before leaving the store; she described the person as being about five feet six inches in height and as having a husky build, dark brown hair, and a pale, rounded face with no facial hair; although at the time the witness believed the person she saw to be a male, she told people the night of the crime that she would never forget the person's face as long as she lived; and the witness stated that her identification of the accomplice was independent of any photograph she had seen. Furthermore, the pretrial procedure was not so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny defendant due process of law where the witness, while meeting with the district attorney in his office, saw a photograph of defendant's accomplice lying on the desk and asked to see it; and although she recognized the person in the photograph as the assailant, no one asked her to identify the person depicted in the photograph, and she made no statement about it.

APPEAL by defendant from *Rousseau, J.,* 29 October 1979 Criminal Session of FORSYTH Superior Court.

Defendant was charged in separate indictments proper in form with conspiracy to commit armed robbery, armed robbery and the murder of Paul Steven Miller. He entered a plea of not guilty to each charge. The charges were consolidated for trial.

At trial the State presented evidence tending to show that at approximately 8:30 p.m. on 30 June 1978, several persons standing at the check-out counters of the Food World supermarket near Stanleyville, North Carolina, heard Steven Miller, the night manager, call for help. They saw an individual in the manager's office fire two shots at Mr. Miller, drop the gun and run out of the store. The assailant was described as being stocky in build, about five feet six inches tall, between eighteen and twenty-two years old, weighing from 150 to 160 pounds and wearing jeans, a striped shirt, tennis shoes, sunglasses and a small-brimmed hat. After a *voir dire* had been conducted and the trial court had ruled her identification testimony to be admissible, witness Betty Ballard identified the assailant as Dharlene Frances Moore.

Harold Dennis Turbyfill testified for the State that he followed the assailant outside to the parking lot and into a blue car, where they struggled and Mr. Turbyfill succeeded in taking the car keys away from the assailant. After the two had gotten out of the car, a white Chevrolet van drove toward them, stopped, and the assailant climbed in. The person driving the van told Mr. Turbyfill to "leave him alone." Mr. Turbyfill described the driver as a man between forty and forty-five years old, approximately six feet tall, weighing from 145 to 150 pounds and having a narrow, clean-shaven face, dark hair and a hawk bill nose. A white van, registered in the name of defendant's wife and matching the description and license tag number given by Mr. Turbyfill, was later found.

Wallace Alvarian Turner testified for the State, and his testimony tended to show that he had known defendant since 1966 and had known Dharlene Moore, whom he knew as "Sam," for about two years. The witness testified that on several occasions he had been involved in criminal activities with defendant. On 30 June 1978 the witness and his wife arrived at their home around 9:15 in the evening. Almost immediately defendant and Dharlene Moore drove up in a Chevrolet van. Defendant told witness Turner that he had come by looking for him three times earlier that evening. Defendant stated, "Well, really messed up. I guess they'll give me the chair this time. Sam went to Food World and really made a mess of things." Defendant also told the witness that a man was chasing "Sam" through the parking lot and defendant had shouted to him, "Leave that damn man alone." Defendant had picked "Sam" up in the van because her car would not start. Defendant told the witness that Ms. Moore was wearing an Ace bandage around her chest to alter her appearance. Turner also said that when Ms. Moore came to his home on 30 June 1978, she was wearing a T-shirt, blue tennis shoes and overalls, with her hair put up in a cap.

Dr. Modesto Scharyj testified that, in his opinion, Mr. Miller died of a gunshot wound in the abdomen.

The jury returned verdicts of guilty of conspiracy to commit armed robbery, guilty of attempted armed robbery and guilty of first-degree murder, with a recommendation that defendant be sentenced to life imprisonment on the murder charge. The trial

court arrested judgment on the attempted armed robbery conviction and imposed a sentence of life imprisonment on the first-degree murder charge and a consecutive sentence of ten years on the charge of conspiracy. Defendant appealed to this Court from the sentence imposed on the verdict of guilty of murder and we allowed his motion to bypass the Court of Appeals on the conspiracy charge on 15 April 1980.

*Rufus L. Edmisten, Attorney General, by Thomas H. Davis, Jr. and Jane Rankin Thompson, Assistant Attorneys General, for the State.*

*Robert Dennis Hinshaw and Charles J. Alexander, II, for defendant appellant.*

BRANCH, Chief Justice.

[1] Defendant first contends that the assistant district attorney committed reversible error when, on direct examination, he asked witness Turbyfill to look at defendant and to state whether he could identify defendant as the driver of the van.

A *voir dire* hearing was held at trial on defendant's motion to suppress witness Turbyfill's in-court identification of defendant. At the conclusion of the *voir dire*, the trial court granted defendant's motion to suppress on the basis of a prior, impermissibly suggestive identification at police headquarters. After the jury returned, direct examination of the witness continued and Mr. Turbyfill described the driver of the van in detail. The assistant district attorney, Mr. Yeatts, then asked the following questions:

> Q. All right, sir. Would you look at the defendant here in the courtroom today?
>
> A. I beg your pardon, sir?
>
> Q. Would you look at the defendant here in the courtroom today?
>
> (The witness looks in the direction of the defense table.)
>
> Q. Would you state whether or not you can identify that individual as the individual you saw in the van?
>
> MR. ALEXANDER: Objection.
>
> COURT: Sustained.
>
> MR. YEATTS: Do not answer that question.

After a brief cross-examination, the assistant district attorney asked again on redirect examination:

> Q. Did you get a good look at the individual that was driving that van?
>
> A. Yes, sir, I did.
>
> Q. Did you look at him?
>
> A. Yes, sir, I did.
>
> Q. State whether or not you see him here today.
>
> MR. ALEXANDER: Objection, Your Honor.
>
> COURT: Sustained.
>
> MR. YEATTS: Don't answer that. I have no further questions.

Defendant contends that by these questions the prosecutor placed incompetent and prejudicial matter before the jury.

In light of the court's prior ruling, the prosecutor's line of questioning was clearly improper. However, in each instance the trial court correctly sustained defendant's objection, and the witness was directed not to answer the question. We have held that when the trial court promptly sustains an objection to a question asked by the prosecutor, no prejudice results. *State v. Barrow*, 276 N.C. 381, 172 S.E. 2d 512 (1970); *State v. Butler*, 269 N.C. 483, 153 S.E. 2d 70 (1967). Ordinarily, merely asking a question will not be held to be prejudicial. *State v. Barrow, supra; see State v. Williams*, 255 N.C. 82, 120 S.E. 2d 442 (1961). Moreover, defense counsel failed to request that the court instruct the jury to disregard the prosecutor's questions. Mr. Turbyfill was allowed at trial to give a detailed description of the driver of the van which corresponded to defendant's appearance. In view of the strong evidence of defendant's guilt and the court's prompt action in sustaining defendant's objections, we cannot say that defendant has shown that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at trial." G.S. 15A-1443(a); *State v. Williams*, 275 N.C. 77, 165 S.E. 2d 481 (1969); *State v. Temple*, 269 N.C. 57, 152 S.E. 2d 206 (1967).

[2] Defendant next contends that the trial court erred in denying defendant's motion for a continuance based upon pretrial publicity.

State v. Weimer

Although defendant and Dharlene Moore were originally to be tried jointly, the court on 19 October 1980 granted Ms. Moore's motion for severance. Ms. Moore's trial was set for 22 October 1980, and defendant's trial was continued to the following week of 29 October. Defendant subsequently filed motions for a change of venue and for a continuance in his case, claiming that the extensive publicity surrounding Ms. Moore's trial and particularly the references to defendant in certain news articles made it impossible for him to receive a fair trial in Forsyth County. Both motions were denied by the trial court.

A motion for a continuance is ordinarily within the sound discretion of the trial court, and its ruling thereon is not subject to review absent an abuse of discretion. *State v. Rigsbee*, 285 N.C. 708, 208 S.E. 2d 656 (1974); *State v. Baldwin*, 276 N.C. 690, 174 S.E. 2d 526 (1970).

During jury selection, several prospective jurors indicated that they had previously read or heard about the case. When questioned individually by the court, however, each of the jurors stated that he had not formed or expressed an opinion about the case and could render a fair and impartial verdict based on the evidence and the law as presented at trial. The record reveals that defendant was given an opportunity to examine prospective jurors on *voir dire*, but it fails to show that defendant ever requested the removal for cause of any venireman who eventually sat on the impaneled jury. Neither does the record show that defendant had exhausted his peremptory challenges before he passed the jury.

In *State v. Tilley*, 292 N.C. 132, 232 S.E. 2d 433 (1977), this Court upheld the trial judge's refusal to order a continuance, change of venue or separate trials based on facts similar to those in the instant case and in part stated:

"Where the record discloses, as it does in the instant case, that the presiding judge conducted a full inquiry, examined the press releases and the affidavits in support of the motion, and where the record fails to show that any juror objectionable to the defendant was permitted to sit on the trial panel, or that defendant had exhausted his peremptory challenges before he passed the jury, denial of the motion for change of venue was not error. (Citations omitted.)"

*Id.* at 142, 232 S.E. 2d at 441.

We hold that the trial court did not err in denying defendant's motion for a continuance.

[3] By his final assignment, defendant contends that the trial court erred in allowing witness Betty Ballard to identify Dharlene Moore as the person who shot Miller. He claims that Ms. Ballard's identification was tainted by an impermissibly suggestive pretrial identificaiton procedure in which she was shown a photograph of Ms. Moore in the district attorney's office.

It is now well settled that an in-court identification is competent evidence, even if the witness took part in an illegal pretrial confrontation or photographic identification, where it is first determined by the trial judge on clear and convincing evidence that the in-court identification is of independent origin and thus not tainted by the illegal pretrial identification procedure. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed. 2d 1149 (1967); *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (1963); *State v. Yancey*, 291 N.C. 656, 231 S.E. 2d 637 (1977); *State v. Henderson*, 285 N.C. 1, 203 S.E. 2d 10 (1974), *death sentence vacated*, 428 U.S. 902 (1976); 1 Stansbury's North Carolina Evidence § 57 (Brandis Rev. 1973).

In the instant case, Ms. Ballard, a supermarket employee, testified that she was standing at a cash register near the exit of Food World when she heard Steven Miller call for help and the sound of two gunshots. She observed a person leave the manager's office and walk out of the store. This person faced Ms. Ballard at all times before leaving the store. Although the witness stated that she did not pay much attention to the clothing, she described the person as wearing blue jeans and tennis shoes. She could not recall whether the person was wearing sunglasses or a hat. The person had a husky build, dark brown hair, a pale, rounded face with no facial hair and was about five feet six inches in height. Ms. Ballard admitted that Ms. Moore appeared slimmer and had lighter hair at trial than Ms. Ballard had remembered. Although at the time the witness believed that the person she had seen was a young white male, she told people on the night of the crime that "I'll never forget the face as long as I live." Ms. Ballard further testified that her identification of Ms. Moore was independent of any photograph she had seen.

At the conclusion of the *voir dire* examination, the trial court made findings of fact consistent with the evidence set forth above and, *inter alia*, found "from clear and convincing evidence that the identification of Ms. Moore was based solely on the observation of having seen Mrs. Moore immediately after Mr. Miller was shot in the Food World Grocery Store on June 30, 1978." The trial judge's finding that the identification testimony was based solely on the witness' observation of defendant on 30 June 1978 was supported by competent evidence and is binding on this court. *State v. Tuggle*, 284 N.C. 515, 201 S.E. 2d 884 (1974). Any discrepancies or contradictions in her testimony go to the weight rather than the competency of the testimony. *State v. Bass*, 280 N.C. 435, 186 S.E. 2d 384 (1972). Thus, the trial court's ruling admitting Ms. Ballard's identification testimony was without error.

Although not necessary for determination of this assignment of error, we further note that the challenged pretrial procedure was not "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to deny defendant due process of law. *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed. 2d 1199, 1206 (1967).

In *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed. 2d 1247 (1968), the United States Supreme Court set forth the standard for determining whether an in-court identification following an allegedly suggestive pretrial identification procedure satisfies the requirements of due process. There the Court stated,

> [W]e hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

*Id.* at 384, 88 S.Ct. at 971, 19 L.Ed. 2d at 1253; *accord, State v. Long*, 293 N.C. 286, 237 S.E. 2d 728 (1977); *State v. Smith*, 278 N.C. 476, 180 S.E. 2d 7 (1971); *State v. Hatcher*, 277 N.C. 380, 177 S.E. 2d 892 (1970).

Ms. Ballard testified on *voir dire* that the week prior to the trial of Dharlene Moore she met with the district attorney. While

in his office, Ms. Ballard saw a photograph lying on the desk and asked to see it. Although she recognized the person in the photograph as being the assailant, no one asked her to identify the person depicted in the photograph, and she made no statement about it.

Concerning the suggestiveness of the pretrial photographic procedure, the trial court found "from clear and convincing evidence that the photographic show-up by one photograph was not so impermissibly suggestive as to cause Mrs. Ballard to identify Mrs. Moore on the basis of the photograph." The evidence supports this finding, and the finding would in turn support the trial judge's ruling admitting the identification testimony.

Our conclusion that the evidence was properly admitted is supported by decisions of this and other jurisdictions holding that the exhibition of a single photograph does not necessarily result in a substantial likelihood of misidentification. *See* Annot., 39 A.L.R. 3d 1000, 1013 (1971), *and cases cited therein.* Furthermore, it has been held that "unrigged" courtroom and station house confrontations which amount to single exhibitions of the accused do not necessarily violate due process. *State v. Thomas*, 292 N.C. 527, 234 S.E. 2d 615 (1977); *State v. Tuggle, supra; State v. Bass, supra.*

Since we have concluded that the court's findings and conclusions are supported by competent evidence, we do not deem it necessary to determine whether defendant has standing to challenge Ms. Ballard's identification of Ms. Moore because of an allegedly suggestive pretrial identification. *See generally, United States v. Salvucci*, 48 U.S.L.W. 4881 (decided 25 June 1980); *United States v. Payner*, 48 U.S.L.W. 4829 (decided 23 June 1980).

We have carefully considered the entire record and find no error warranting a new trial.

No error.