STATE OF NORTH CAROLINA v. DHARLENE FRANCES MOORE

No. 4

(Filed 4 November 1980)

1. **Constitutional Law § 30—witness's viewing of defendant's photograph—failure of district attorney to disclose information – defendant not prejudiced**

   Defendant was not prejudiced by the district attorney's failure to disclose that a witness had seen a photograph of defendant, and defendant's contention that she was too surprised adequately to cross-examine the witness was without merit, since defendant's attorney was aware that the State possessed a photograph of defendant; when the district attorney was asked during discovery if he had shown the photograph to anyone, he truthfully replied that he had not; subsequently, the witness was in the district attorney's office for the first time and asked to see a picture of defendant; the district attorney handed her the picture in question and she looked at it for a short period; he did not ask the witness if the person photographed resembled the individual she had seen and the witness never indicated that she recognized the person in the picture; the district attorney first became aware that the witness recognized and could identify defendant during her testimony at trial; and the only fact he failed to disclose to defendant prior to the witness's testimony was that he had shown the witness the picture for a short time.

2. **Criminal Law §§ 66.9, 66.16— identification of defendant – pretrial photographic procedure not suggestive**

   The trial court in a homicide prosecution did not err in allowing an

State v. Moore

eyewitness to the shooting to make an in-court identification of defendant, since the identification was based solely on the witness's personal observation of defendant immediately after the shooting, and the observation of one photograph by the witness was not a pretrial identification procedure sufficiently suggestive to deny defendant due process of law.

3. **Constitutional Law § 30– list of State's witnesses and statements — no discovery — no error**

Defendant was not entitled to pretrial discovery of the names of the State's witnesses, any statement of defendant to a third party, or any statement of a codefendant.

4. **Criminal Law § 98.2– sequestration of witnesses – denial of motion no abuse of discretion**

In a prosecution for the first degree murder of a supermarket manager, the trial court did not err in denying defendant's motion, made after two supermarket employees had testified, to sequester the remaining witnesses who were supermarket customers, since nearly all the witnesses testified to different facts and circumstances surrounding the incident, and the testimony of each witness was sufficiently different from the others so as to indicate an absence of collusion or the parroting of another's testimony.

5. **Criminal Law § 71– assailant having feminine run – shorthand statement of fact admissible**

The trial court in a homicide prosecution did not err in allowing witnesses to the shooting to give testimony characterizing the assailant as female or having feminine characteristics and particularly describing the manner in which the assailant fled from the store as "like a feminine run," since such testimony was admissible as a shorthand statement of fact.

6. **Homicide § 20– admissibility of pistol – chain of custody**

There was no merit to defendant's contention in a homicide prosecution that the trial court erred in admitting into evidence a .38 caliber revolver because the State failed to establish a continuous chain of custody to the date of trial and failed to show that the fatal bullet was fired from the weapon, since the evidence tended to show that the victim, a supermarket manager, died of a gunshot wound; a .38 caliber pistol was found on the steps of the manager's office immediately after the shooting; no gun was normally kept in the office; members of the sheriff's department testified that the State's exhibit was the weapon or a weapon identical to the gun taken from the scene of the shooting; the gun found by the officers contained four unfired cartridges and one fired cartridge; and an SBI agent testified that the bullet found in the victim's body could have been fired from a .38 pistol.

7. **Criminal Law § 76.2– defendant's confession to persons other than law officers – voir dire not required**

The trial court did not err in denying defendant's motion for a voir dire examination of two witnesses to determine the voluntariness of admissions made to them by defendant and an accomplice, since defendant and her accomplice went to the witnesses' home of their own free will and admitted their participation in the shooting without coercion from the witnesses.

State v. Moore

8. **Criminal Law § 48– silence of defendant – implied admission**

The trial court in a homicide prosecution properly instructed the jury on implied admissions where the evidence tended to show that defendant's accomplice talked to a witness about the crime, mentioning defendant's participation in the shooting on several occasions; defendant was sitting on a couch approximately twelve feet away and could hear what they were saying; and defendant never made a statement of denial.

9. **Criminal Law § 89.3– hearsay testimony – admissibility for corroboration**

The trial court did not err in admitting the hearsay testimony of a State's witness which was offered for the purpose of corroborating another witness.

10. **Criminal Law § 117.2– interested witnesses – general instruction sufficient**

Evidence was insufficient to show that two witnesses were interested witnesses so as to require the trial court to give the jury special instructions with respect to them, and the court's general instruction concerning interested witnesses was an adequate statement of the existing law.

11. **Criminal Law § 113.1– failure to summarize evidence favorable to defendant – evidence unnecessary to explanation of applicable law**

There was no merit to defendant's contention that the trial court erred in its summary of the evidence to the jury by failing to relate any of the evidence favorable to defendant, since defendant presented no evidence in her behalf, and none of the State's evidence favorable to defendant or evidence elicited by defendant on cross-examination was necessary to an explanation of the applicable law.

Justice BROCK did not participate in the consideration or decision of this case.

APPEAL by defendant from *Rousseau, J.*, 15 October 1979 Criminal Session of FORSYTH Superior Court.

Defendant was charged in separate indictments, proper in form, with the first degree murder of Paul Steven Miller and conspiracy to commit armed robbery. The charges were consolidated for trial and defendant entered a plea of not guilty to each charge.

At trial the State's evidence tended to show that at approximately 8:30 p.m. on 30 June 1978, several persons standing at the check-out counters of the Food World in Stanleyville, North Carolina, heard Paul Steven Miller, the night manager, call for help. They observed Mr. Miller in the manager's office, an area raised above the floor level of the store, and saw an individual fire two shots at Mr. Miller, drop the gun, and flee from the store. The assailant was described as being stocky in build,

weighing from 150 to 160 pounds, about five feet six inches tall, between eighteen and twenty-two years old, and dressed in blue jeans, a striped T-shirt, tennis shoes, sunglasses and a small-brimmed hat. Several witnesses testified that the assailant ran from the store in an awkward fashion, similar to a "feminine run." After a *voir dire* examination, the trial court allowed Betty Ballard, a Food World employee, to identify defendant as the assailant.

Dennis Turbyfill, a customer at Food World, testified for the State that he followed defendant out of the store and jumped into a blue automobile with her. He struggled with defendant and grabbed the car keys from the ignition. After the two had gotten out of the car, a white Chevrolet van drove up and defendant climbed into it. The driver of the van, later identified as Jackie Richard Weimer, told Mr. Turbyfill to "leave that guy [defendant] alone." A white van with a license tag number matching the one given by Mr. Turbyfill was found in a parking lot shortly thereafter. The van was registered in the name of Jackie Weimer's wife and was positively identified by her at trial.

State's witness Wallace Alverin Turner testified that he had known Mr. Weimer since 1966 and had known defendant, whom he knew as "Sam," for about two years. He stated that defendant and Mr. Weimer arrived at his home shortly after he and his wife had returned from work on the morning of 1 July 1978, at approximately 9:00 a.m. He recalled that defendant was wearing tennis shoes, blue jeans, a T-shirt, and a hat with her hair piled up into it. Mr. Turner related that Mr. Weimer said something to the effect of: "They are going to fix me this time. More than likely they'll give me the chair." He further stated that he had "really messed up" at the Food World, and that "Sam" had gone into the Food World and "messed up." Mr. Weimer then proceeded to relate the Food World incident to Mr. Turner, including his participation in driving the white van and ordering Mr. Turbyfill to leave defendant alone. Defendant was present during the entire conversation between Mr. Turner and Mr. Weimer, sitting on a couch about twelve feet away from the two men. Defendant sat silently and did not deny any of Mr. Weimer's statements. Mrs. Turner testified that later the same day during the same visit defendant admitted to her that she had shot a man at Food World.

Dr. Modesto Scharyj testified that, in his opinion, Mr. Miller died of a gunshot wound in the abdomen.

Defendant and Mr. Weimer were apprehended on 1 June 1979 in Anderson County, South Carolina.

The jury found defendant guilty of first degree murder and conspiracy to commit armed robbery. Defendant appeals from the trial court's judgment sentencing her to life imprisonment for first degree murder and ten years imprisonment for conspiracy to commit armed robbery. Defendant's motion to bypass the North Carolina Court of Appeals on the conspiracy judgment was allowed 25 April 1980.

Other facts relevant to the decision will be related in the opinion.

*W. Joseph Burns for the defendant-appellant.*

*Attorney General Rufus L. Edmisten, by Assistant Attorney General J. Michael Carpenter, for the State.*

COPELAND, Justice.

Jackie Richard Weimer was convicted after a separate trial of first degree murder and conspiracy to commit armed robbery. The judgment of the trial court was affirmed by this Court in *State v. Weimer*, 300 N.C. 642, 268 S.E. 2d 216 (1980). The opinion by Chief Justice Branch in *Weimer* is cited below where dispositive of identical assignments of error raised by defendant. We have carefully considered each of defendant's assignments of error and, for the reasons stated below, we find no error justifying a new trial.

[1] Defendant first contends that the State violated G.S. 15A-907 by not disclosing to defendant prior to trial the fact that Betty Ballard had seen a photograph of defendant in the district attorney's office. Defendant claims she was prejudiced by this non-disclosure in that she was unprepared to fully cross-examine Ms. Ballard. Defendant further alleges that the trial court erred in not imposing sanctions pursuant to G.S. 15A-910 for the State's failure to disclose.

Defendant made a timely motion for discovery in accordance with G.S. 15A-902(a), requesting the State to supply, among other information, any photographs in its possession.

This motion gave rise to the State's duty under G.S. 15A-907 to disclose any additional, relevant evidence discovered prior to or during the trial. *State v. Jones,* 296 N.C. 75, 248 S.E. 2d 858 (1978). The record clearly shows that during discovery, which took place prior to 16 October 1979, defendant's attorney was aware that the State possessed a photograph of defendant. When the district attorney was asked during discovery if he had shown the photograph to anyone, he replied that he had not. This was a truthful statement at the time. In ruling on defendant's motion to suppress Ms. Ballard's in-court identification of defendant, the trial court found as facts that on 16 October 1979 Ms. Ballard was in the district attorney's office and for the first time asked to see a picture of defendant. The district attorney handed her the picture in question and she looked at it for a short period. He did not ask Ms. Ballard if the person photographed resembled the individual she had seen and Ms. Ballard never indicated that she recognized the person in the picture. Ms. Ballard never told anyone that she was able to identify defendant. These findings of fact are supported by competent evidence and are therefore binding on this Court. *State v. Saults,* 299 N.C. 319, 261 S.E. 2d 839 (1980); *State v. Small,* 293 N.C. 646, 239 S.E. 2d 429 (1977). It appears, then, that the district attorney first became aware that Ms. Ballard recognized and could identify defendant during her testimony at trial. Thus, the only fact he failed to disclose to defendant prior to Ms. Ballard's testimony was that he had shown the witness the picture for a short time. He may well have considered this an irrelevant matter outside his statutory duty to disclose. Even if there was a duty to disclose pursuant to G.S. 15A-907, there is no evidence of bad faith on the part of the district attorney nor is there any indication that he misrepresented the facts to defendant. Defense attorney had the opportunity to conduct a complete and searching cross-examination of Ms. Ballard. We therefore hold that defendant was not prejudiced by the district attorney's failure to disclose that Ms. Ballard had seen the photograph, and defendant's contention that she was too surprised to adequately cross-examine the witness is without merit. *State v. Jones, supra; State v. Hill,* 294 N.C. 320, 240 S.E. 2d 794 (1978). We also find no merit in defendant's argument that the trial court erred in not imposing sanctions under G.S. 15A-910. The decision to employ one of the remedies available under G.S. 15A-910 is a matter within the discretion of the trial

judge and, absent abuse, is not reviewable on appeal. *State v. Hill, supra; State v. Thomas,* 291 N.C. 687, 231 S.E. 2d 585 (1977). Defendant did not request the imposition of sanctions at the time the facts were revealed. Furthermore, defendant showed no evidence of bad faith by the State and defendant was not prejudiced by the State's nondisclosure. For these reasons the trial judge did not abuse his discretion in refusing to impose sanctions.

[2] By her fourth assignment of error, defendant contends that the trial court erred in allowing Betty Ballard to give an in-court identification of defendant. Defendant claims that showing Ms. Ballard a picture of defendant in the district attorney's office constituted an impermissibly suggestive pretrial identification procedure which tainted Ms. Ballard's in-court identification and rendered it inadmissible. We addressed and overruled the identical assignment of error in *State v. Weimer, supra.* Our decision in that case is dispositive of defendant's argument in this case and we likewise find no error. Ms. Ballard's in-court identification was properly allowed both because it was based solely on her personal observation of defendant immediately after the shooting and because the observation of one photograph was not a pretrial identification procedure sufficiently suggestive to deny defendant due process of law. *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed. 2d 1247 (1968); *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed 2d 1149 (1967); *State v. Thomas,* 292 N.C. 527, 234 S.E. 2d 615 (1977); *State v. Yancey,* 291 N.C. 656, 231 S.E. 2d 637 (1977).

[3] In her second assignment of error defendant contends that the trial court erred in denying her motion for pretrial discovery of the names of the State's witnesses, any statement made by defendant to a third party, and any statement of a codefendant.

It is well settled that a defendant in a criminal case is not entitled to a list of the State's witnesses who are to testify against him. G.S. 15A-903, which lists the information the State must disclose upon defendant's proper discovery motion, does not alter this rule. *State v. Sledge,* 297 N.C. 227, 254 S.E. 2d 579 (1979); *State v. Smith,* 291 N.C. 505, 231 S.E. 2d 663 (1977).

Nor is the State required to disclose the substance of defendant's statements to third parties which the State intends to

State v. Moore

use as evidence against him. G.S. 15A-903(a)(2) provides that the State, upon defendant's motion, must "... divulge, in written or recorded form, the substance of any oral statement made by the defendant which the State intends to offer in evidence at the trial." This provision has been interpreted to require the State to disclose defendant's statements to third parties only when the third party is an agent of the State. *State v. Crews*, 296 N.C. 607, 252 S.E. 2d 745 (1979). Defendant gave no indication that the statements she sought to discover were statements she had made to an agent of the State, therefore her motion to discover was properly denied.

Likewise, the State was not obliged to divulge any statement of a codefendant. G.S. 15A-903(b) entitles defendant to discover any written, recorded, or oral statement by a codefendant "... which the State intends to offer in evidence at their joint trial." Defendant's motion to sever her case from codefendant Weimer's for separate trial was granted on 19 October 1979, prior to the commencement of this trial. Since there was no joint trial, defendant had no right under G.S. 15A-903(b) to discover statements made by a codefendant. We find defendant's assignment of error without merit.

[4]  By her fifth and thirteenth assignments of error defendant alleges that the trial court erred in denying her motion to sequester several of the State's witnesses. After two Food World employees had testified for the State, defendant moved to sequester the remaining witnesses who were Food World employees or customers in the store at the time of the shooting. The one employee witness remaining was sequestered by the court, but defendant's motion as to the customers was denied. Defendant claims that allowing the customer witnesses to testify in the presence of each other created a risk of collusion among the witnesses which prevented her obtaining a fair trial. The sequestration of witnesses is a matter within the trial judge's discretion, and his ruling thereon is not reviewable absent a showing of abuse of that discretion. *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L. Ed. 2d 592 (1976); *State v. McQueen*, 295 N.C. 96, 244 S.E. 2d 414 (1978); *State v. Cross*, 293 N.C. 296, 237 S.E. 2d 734 (1977). In this case, defendant had filed a pretrial motion for sequestration of witnesses which she later abandoned. She offered no reason to the court for her renewal of the motion. We have carefully reviewed the testimony of each

witness defendant sought to sequester and found that nearly all the witnesses testified to different facts and circumstances surrounding the incident. The testimony of each witness is sufficiently different from the others so as to indicate an absence of collusion or the parroting of another's testimony. Under these circumstances, the failure of the trial court to sequester witnesses did not prejudice defendant and we find no abuse of discretion. *See State v. Mason*, 295 N.C. 584, 248 S.E. 2d 241 (1978).

Defendant also contends that the trial court abused its discretion in denying her motion to sequester the witnesses Wallace Alverin Turner and his wife, Viola Mae Turner during the testimony of the other. Defendant claims that she could not effectively cross-examine either of the Turners in the presence of the other, in that there were certain lines of questioning defendant wished to pursue which would be harmful to the marriage and which either spouse would be reluctant to discuss in the presence of the other. The trial record reveals that defendant conducted an extensive cross-examination of both witnesses, during which Mrs. Turner admitted that she had had sexual relations with Mr. Weimer and that she had seen her husband "in bed with" defendant. Mr. Turner testified on cross-examination that he had "been with" defendant and eight or nine hundred other women. These responses indicate that neither spouse was a restraining influence on the other. The trial court did not abuse its discretion in refusing to sequester the witnesses and defendant's assignments of error are overruled.

[5] Defendant next argues that it was error to permit the witnesses Charles Stoltz and Dennis Turbyfill, Food World customers at the time of the shooting, to give testimony characterizing the assailant as female or having feminine characteristics. Defendant claims that whether the assailant was male or female was a question for the jury and the State's witnesses should not have been allowed to give an opinion on the assailant's sex. The specific testimony objected to was the witnesses' description of the manner in which the assailant fled from the store as "like a feminine run." As a general rule, a witness may not give opinion evidence when the facts underlying the opinion are such that the witness can state them in a manner which will permit an adequate understanding of them

by the jury and the witness is no better qualified than the jury to draw inferences and conclusions from facts. *State v. Sanders*, 295 N.C. 631, 245 S.E. 2d 674 (1978); *State v. Watson*, 294 N.C. 159, 240 S.E. 2d 440 (1978). However, this Court has long held that a witness may state the "instantaneous conclusions of the mind as to the appearance, condition, or mental or physical state of persons, animals, and things, derived from observation of a variety of facts presented to the senses at one and the same time." *State v. Spaulding*, 288 N.C. 397, 411, 219 S.E. 2d 178, 187 (1975). Such testimony is referred to as a shorthand statement of facts, and is admissible when, as here, the facts on which the witness bases his opinion are difficult to describe in a manner which will allow the jury to understand them sufficiently to be able to draw their own inferences. *State v. Myers*, 299 N.C. 671, 263 S.E. 2d 768 (1980); *State v. Jones*, 291 N.C. 681, 231 S.E. 2d 252 (1977); 1 Stansbury, N.C. Evidence §125 (Brandis Rev. 1973). In this case, it was extremely difficult for the witnesses to convey their impressions of the person fleeing without referring to the feminine nature of the run. We therefore find the testimony admissible as a shorthand statement of facts. Any prejudicial effect of the statement was remedied by the trial judge's instruction during Mr. Turbyfill's testimony that the jury should disregard that the witness said the person ran more like a female than a male. Defendant's assignment of error is without merit.

By her eleventh assignment of error, defendant contends that the trial court erred in permitting Avis Weimer, wife of Jackie Weimer, to testify that she saw defendant and Mr. Weimer "in bed together." She argues that this testimony, was irrelevant, inflammatory, and highly prejudicial. It is well settled that a party loses his objection to the admission of testimony when the same or similar evidence is theretofore or thereafter admitted without objection. *State v. Smith*, 294 N.C. 365, 241 S.E. 2d 674 (1978). In this case, both Mr. and Mrs. Turner testified without objection that defendant had "been to bed with" Mr. Turner. We therefore find that defendant waived her right to object to Mrs. Weimer's testimony. In any event, the statement was not unduly prejudicial to defendant, and her assignment of error is overruled.

[6] In defendant's twelfth assignment she alleges that it was error to admit into evidence State's Exhibit 13, a .38 caliber

revolver, where the State failed to establish a continuous chain of custody to the date of trial and failed to show that the fatal bullet was fired from the weapon. This argument is without merit. This court has often held that "any object which has a relevant connection with the case is admissible in evidence, in both civil and criminal trials. Thus, weapons may be admitted where there is evidence tending to show that they were used in the commission of a crime . . . ." *State v. Crowder*, 285 N.C. 42, 46, 203 S.E. 2d 38, 41-42 (1974), *death sentence vacated*, 428 U.S. 903, 96 S.Ct. 3205, 49 L. Ed. 2d 1207 (1976). *See also State v. Lovette*, 299 N.C. 642, 263 S.E. 2d 751 (1980); *State v. Thomas*, 294 N.C. 105, 240 S.E. 2d 426 (1978); *State v. Bishop*, 293 N.C. 84, 235 S.E. 2d 214 (1977); 1 Stansbury, N.C. Evidence § 118 (Brandis Rev. 1973). In the instant case, there was evidence tending to show that Mr. Miller died of a gunshot wound; that a .38 caliber pistol was found on the steps of the manager's office immediately after the shooting, and that no gun was normally kept in the office. Members of the Forsyth County Sheriff's Department testified that State's Exhibit 13 was the weapon or a weapon identical to the gun taken from the scene of the shooting, and that the gun they found contained four unfired cartridges and one fired cartridge. SBI agent Carpenter stated that the bullet found in the victim's body could have been fired from a .38 pistol. This evidence tended to show that State's Exhibit 13 was the weapon used in the commission of the murder, and thus the weapon was properly admitted into evidence. Any evidence to the contrary only affects the probative force of the exhibit, not its admissibility. *State v. Thomas, supra.*

[7] By her assignments numbered 14 through 20, 22, and 27, defendant contests two of the trial court's rulings concerning the testimony of State's witnesses Mr. and Mrs. Turner. She first alleges that the trial court erred in denying her motion for a *voir dire* examination of the Turners to determine the voluntariness of admissions made to them by defendant and Jackie Weimer, as required by the United States Supreme Court in *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L. Ed. 2d 908 (1964). Defendant has misinterpreted the necessity for a *voir dire* examination to determine the voluntariness of confessions. Our rule was established in *State v. Perry*, 276 N.C. 339, 345-46, 172 S.E. 2d 541, 546 (1970) as follows:

"As a general rule, voluntary admissions of guilt are admissible in evidence in a trial. To render them inadmissible, incriminating statements must be made under some sort of pressure. Here we quote from the Supreme Court of the United States in *Hoffa v. United States*, 385 U.S. 293, 17 L. Ed. 2d 374: 'Neither this Court nor any member of it has ever expressed the view that the Fourth Amendment protects a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it .... "The risk of being overheard by an eavesdropper or betrayed by an informer or deceived as to the identity of one with whom one deals is probably inherent in the conditions of human society. It is the kind of risk we necessarily assume whenever we speak." [A]ll have agreed that a necessary element of compulsory self-incrimination is some kind of compulsion.' "

This rule was recently reaffirmed in *State v. Boykin*, 298 N.C. 687, 259 S.E. 2d 883 (1979), where Justice Carlton, speaking for the Court, found defendant Boykin's admissions to a police officer admissible without a *voir dire* to determine voluntariness. The evidence presented in the instant case indicates that defendant and Mr. Weimer went to the Turner's home of their own free will and admitted their participation in the shooting without coercion from the Turners. We therefore find no error in the trial court's refusal to grant a *voir dire*.

[8] Defendant also contends that it was error for the trial court to instruct the jury on the law concerning admission by silence, in that the State's evidence was insufficient to support a finding that defendant implied an admission by not denying statements made by Mr. Weimer to Mr. Turner. The rule in this jurisdiction on implied admissions was aptly stated in *State v. Spaulding*, 288 N.C. 397, 406, 219 S.E. 2d 178, 184 (1975):

"Implied admissions are received with great caution. However, if the statement is made in a person's presence by a person having firsthand knowledge under such circumstances that a denial would be naturally expected if the statement were untrue and it is shown that he was in position to hear and understand what was said and had the opportunity to speak, then his silence or failure to deny renders the statement admissible against him as an implied admission.

2 Stansbury's N.C. Evidence, § 179, p. 50 (Brandis Rev. 1973)."

*See also State v. Phifer,* 290 N.C. 203, 225 S.E. 2d 786 (1976), *cert. denied,* 429 U.S. 1123, 97 S. Ct. 1160, 51 L. Ed. 2d 573 (1977). In the present case, the evidence tends to show that during Jackie Weimer's discussion with Mr. Turner, defendant was present and silently seated on a couch approximately twelve feet away. Mr. Turner testified that defendant was close enough to the two men to hear what they were saying. Mr. Weimer referred to defendant's participation in the shooting on several occasions, but she never made a statement of denial. We find this testimony sufficient to show that defendant was in a position to hear Mr. Weimer's statements, that the statements were such that a denial would naturally be expected if the statements were untrue, and that no denial was made by defendant. The instruction to the jury on implied admissions was proper and defendant's assignments of error are overruled.

[9] In assignment number 21 defendant argues it was error to admit the hearsay testimony of State's witness Kay Pettit. Ms. Pettit was allowed, over defendant's objection, to relate a conversation between herself and Mrs. Turner as follows: " . . . she [Mrs. Turner] said, 'you heard about the guy that got killed at Food World last night?' " And I said "Yes." She said, "Well, it wasn't a man that shot him." Ms. Pettit further testified that " . . . she [Mrs. Turner] said the girl did make the statement that she had shot the man but she didn't mean to." This evidence was offered for the purpose of corroborating Mrs. Turner's testimony that defendant had said she shot the man at Food Town but didn't mean to. This Court has long held that prior consistent statements of a witness which strengthen his credibility may be admitted into evidence as an exception to the hearsay rule. *See* 1 Stansbury, N.C. Evidence § 51 (Brandis Rev. 1973), and cases cited therein. To be admissible as corroborative evidence, the prior consistent statement need not be identical to the testimony it is offered to corroborate. Slight variations will affect only the credibility of the evidence, not its admissibility. *State v. Madden,* 292 N.C. 114, 232 S.E. 2d 656 (1977); *State v. Warren,* 289 N.C. 551, 223 S.E. 2d 317 (1976). However, if the testimony offered as a prior consistent statement contains additional or contradictory evidence, it should not be allowed. *State v. Madden, supra; State v. Brooks,* 260 N.C. 186, 132 S.E. 2d

354 (1963). Defendant claims that since Ms. Pettit's testimony referred to the person who shot Mr. Miller as a female, it contained evidence in addition to Mrs. Turner's testimony and should not have been admitted. We disagree. Inherent in Mrs. Turner's statement that defendant said she killed a man at Food World is the statement that the assailant was female. Ms. Pettit's testimony was properly admitted as corroborative evidence and assignment number 21 is overruled.

[10]    By her twenty-sixth assignment of error, defendant alleges that the trial court erred in denying her request for a special instruction to the jury that the Turners were interested witnesses in this case. Instead, the trial judge gave a general instruction concerning interested witnesses, to the effect that the jury might find that a witness was interested in the outcome of the trial and, if so, the jury might properly take this interest into account in deciding the credibility to be attributed to the witness' testimony. We hold that defendant was not entitled to an instruction which required the jury to consider the Turners as interested witnesses. In the present case where there is no evidence to show that the Turners were accomplices in the shooting, testifying under a grant of immunity from the State, or otherwise clearly interested witnesses, whether the Turners should be considered interested parties is a question for jury. *State v. Abernathy*, 295 N.C. 147, 244 S.E. 2d 373 (1978); *State v. Hardy*, 293 N.C. 105, 235 S.E. 2d 828 (1977); *State v. Harris*, 290 N.C. 681, 228 S.E. 2d 437 (1976); *State v. Bailey*, 254 N.C. 380, 119 S.E. 2d 165 (1961); G.S. 15A-1052(c). The only evidence of the Turners' interest or bias in this case is their admitted aid to defendant and Mr. Weimer in not reporting their whereabouts subsequent to the shooting, Mrs. Turner's statement that she "had her reasons" not to report the fugitives' whereabouts, and Mr. Turner's testimony that he had hired an attorney to advise him during this case. This evidence is insufficient to establish that the Turners are interested witnesses to the degree necessary to warrant the instruction requested by defendant.

The instruction requested thus embodies an erroneous statement of the law, and the trial judge properly refused to give it. *State v. Bock*, 288 N.C. 145, 217 S.E. 2d 513 (1975); *State v. Beach*, 283 N.C. 261, 196 S.E. 2d 214 (1973). The court's general instruction concerning interested witnesses was an adequate

statement of the existing law and was sufficient to inform the jury that if they found the Turners to be interested witnesses, they should weigh the credibility of the Turners' testimony accordingly. *State v. Holmes*, 296 N.C. 47, 249 S.E. 2d 380 (1978); *State v. Watson*, 294 N.C. 159, 240 S.E. 2d 440 (1978); *State v. Eakins*, 292 N.C. 445, 233 S.E. 2d 387 (1977). This assignment of error is without merit and overruled.

[11] By her twenty-ninth assignment of error, defendant claims the trial court erred in its summary of the evidence to the jury by failing to relate any of the evidence favorable to defendant. Although defendant presented no evidence in her behalf, she claims that evidence was brought out during her cross-examination of the State's witnesses which tended to raise inferences favorable to her, and therefore the trial judge was required to summarize this evidence in accordance with this Court's holding in *State v. Sanders*, 298 N.C. 512, 259 S.E. 2d 258 (1979). In *Sanders* we interpreted the following language of G.S. 15A-1232: "In instructing the jury, the judge must declare and explain the law arising on the evidence. He is not required to state the evidence except to the extent necessary to explain the application of the law to the evidence." We found that although the wording of G.S. 15A-1232 is not identical to former G.S. 1-180, the law essentially remains unchanged, and thus the provision of G.S. 1-180 which required the trial judge to give equal stress to the State and defendant in its charge is implicit in the new statute. *See also State v. Hewett*, 295 N.C. 640, 247 S.E. 2d 886 (1978). We further held that:

> "... when the court recapitulates fully the evidence of the State but fails to summarize, at all, evidence favorable to the defendant, he violates the clear mandate of the statute which requires the trial judge to state the evidence to the extent necessary to explain the application of the law thereto. In addition, he violates the requirement that equal stress be given to the State and to the defendant."

*State v. Sanders, supra* at 519, 259 S.E. 2d at 262. The State in *Sanders* argued that the defendant waived his right to challenge the trial judge's error on appeal, relying on the general rule that objections to the charge in reviewing the evidence and stating the contentions of the parties must be made before the jury retires so as to afford the trial judge an opportunity for

correction, otherwise they are deemed to have been waived and will not be considered on appeal. *State v. Hewett, supra, State v. Potter,* 295 N.C. 126, 244 S.E. 2d 397 (1978); *State v. Abernathy, supra; State v. Virgil,* 276 N.C. 217, 172 S.E. 2d 28 (1970). The Court rejected the State's contention, expanding the rationale of *State v. Hewett, supra.* In *Hewett* the Court held that where the trial judge in his charge states the *contentions* of the State but fails to relate any *contentions* of defendant, the defendant is not required to object before the jury retires in order to preserve his challenge on appeal. Chief Justice Branch, speaking for the Court in *Sanders,* reasoned that the rationale of *Hewett* "... should apply with equal force when in his instructions the trial judge states the evidence favorable to the State and applies the law to that evidence but fails to state any of the evidence favorable to defendant to the extent necessary to explain the application of the law thereto." *State v. Sanders, supra* at 520, 259 S.E. 2d at 262.

The facts in the case *sub judice* are similar to those in *Sanders* in that the defendant in both cases presented no evidence, claimed that the State's evidence created inferences favorable to the defense, and challenged the trial judge's failure to summarize any of the evidence favorable to the defendant. In both cases defendant failed to object to the charge before the jury retired. The State's argument in the present case that defendant waived her right to challenge the charge on appeal by not making a timely objection is squarely rejected by the Court's opinion in *Sanders.*

However, the case at issue is factually distinguishable from *Sanders,* and we find that G.S. 15A-1232 does not require the trial judge to summarize the evidence favorable to defendant under the circumstances present in this case. The language of the statute and our prior decisions interpreting it require the court to summarize the evidence of both parties only *to the extent necessary to explain the application of the law thereto.* In *Sanders,* the evidence elicited on cross-examination and presented in the State's case which was favorable to defendant was substantive evidence which tended to exculpate defendant, including a statement made by defendant to police officers which was directly in conflict to the evidence presented by the State. The trial judge could not have adequately explained the application of the law in the case without mentioning this evi-

dence. In the present case, the evidence which defendant claims is favorable to her includes testimony by several of the State's witnesses that the assailant had male characteristics, the inability of several witnesses to make a positive in-court identification of defendant, inconsistencies in the witnesses' descriptions of the assailant's clothing, and prior inconsistent statements by some of the witnesses. This evidence is all testimony which tends to impeach or show bias in the State's witnesses. It is not substantive in nature and would not clearly exculpate defendant if believed. The capable trial judge was thus able to adequately relate the application of the law to the evidence without mentioning this testimony. We hold that G.S. 15A-1232 and our opinion in *Sanders* do not require the trial judge to summarize evidence favorable to defendant under the circumstances present in this case where the evidence is not necessary to an explanation of the applicable law. Since there was no evidence favorable to defendant which met this test, the court was not required to summarize it. We find no merit in defendant's assignment number 29.

We have carefully reviewed defendant's assignments of error numbered 17, 23, 24, and 28 and find no error which would entitle defendant to a new trial. Assignments numbered 3, 6, 8, 9, and 25 were not brought forward and argued in defendant's brief and are therefore deemed abandoned. *State v. Franks*, 300 N.C. 1, 265 S.E. 2d 177 (1980); *State v. Detter*, 298 N.C. 604, 260 S.E. 2d 567 (1979), Rule 28 (a)(b)(3), Rules of Appellate Procedure.

Defendant received a fair trial free from prejudicial error. The convictions and sentences are affirmed because in the trial we find

No Error.

Justice BROCK did not participate in the consideration or decision of this case.