STATE OF NORTH CAROLINA v. MICHAEL WILSON ADCOX

No. 38

(Filed 5 May 1981)

1. **Criminal Law § 61.2— shoeprints at crime scene—connection with defendant—admissibility of evidence**

There was no merit to defendant's contention in a first degree murder case that the trial court erred in admitting testimony concerning the similarity between shoeprints found at the scene of the crime and the soles of a pair of shoes found at the home of defendant's parents where defendant lived, and the passage of time between the crime and seizure of the shoes, 33 days, and the

State's failure to tie ownership of the shoes directly to defendant did not combine to make the evidence inadmissible.

**2. Criminal Law § 34.7— prior offenses by defendant—admissibility to show motive**

In a prosecution of defendant for the first degree murder of a grocery store owner, the trial court did not err in permitting the State to introduce evidence of defendant's involvement in two prior break-ins at the murder victim's grocery store, since the State's evidence that the victim had been subpoenaed to testify before a grand jury about one of the break-ins, that defendant and the victim had argued over defendant's involvement in the break-ins, that defendant had threatened the victim's life during the argument, and that defendant had testified at his previous trial on the same murder charge that he realized his parole on prior offenses would probably be revoked if he were convicted of the break-ins had some logical tendency to indicate defendant's motive to commit the homicide for which he was on trial.

**3. Criminal Law § 113.2— recapitulation of evidence—instruction sufficient**

Since the evidence which defendant sought to have the court summarize in its recapitulation of the evidence was brought out on cross-examination for the purpose of impeaching a witness and showing that she was biased, and none of it was substantive evidence which would exculpate defendant, the trial judge was not required to summarize the evidence in question in order to explain and apply the law to the evidence in the first degree murder case.

APPEAL by defendant from *Farmer, J.,* 7 January 1980 Criminal Session of VANCE County Superior Court.

Defendant was charged in a bill of indictment proper in form with the murder of Walter Hamil Satterwhite, Jr., on 25 May 1979. Defendant entered a plea of not guilty. Defendant had been brought to trial on the same charge at the 26 November 1979 Criminal Session of Vance County Superior Court, which trial ended in a mistrial.

The State's evidence tended to show that the victim Satterwhite was last seen alive at about 12:10 a.m. on 25 May 1979 in a car on Highway 1 in Henderson going north toward his home in Middleburg, North Carolina. A witness testified that at about 1:15 a.m. he saw two men outside Satterwhite's Grocery. He said that he could not identify the men but that they were both white and young. The man he could see best had shoulder-length, sandy-colored hair. The victim's body was found at 7:15 a.m. the same day in the front yard of his home which was located directly across the highway from his store. There was medical evidence that Satterwhite died as a result of a shotgun wound to the chest,

and that the estimated time of death was between 9:45 p.m. 24 May and 1:45 a.m. 25 May.

A rear window of the Satterwhite home was found open. Investigators found an open package of cigarettes, a lighter, an ashtray, and a vase in a closet in decedent's bedroom. A fingerprint on the vase matched one of defendant's prints.

The door to the store was found locked, but upon entry the officers found that the store safe was open and that the cash drawer had been removed. A cigar box regularly kept in the safe to hold coins from the machines in the store was found open on the floor with coins scattered around it. A fingerprint lifted from this cigar box matched one of defendant's fingerprints. Decedent's sister, Jean Satterwhite, who managed the store, testified that this cigar box had not been in the store when defendant had worked at the store earlier in the year. She also testified that this cigar box had not been in the store when two prior break-ins in which defendant had been implicated had been committed. Other witnesses who worked in the store testified that defendant had not been in the store during working hours since he had quit work at the store in February.

Over defendant's objection the trial court permitted the State to introduce evidence of defendant's involvement in the previous break-ins. The clerk of superior court testified that the victim had been subpoenaed to appear on 29 May 1979 before the grand jury which was to consider an indictment against defendant for one of the two break-ins. The court reporter who took the evidence at the 26 November 1979 trial of defendant testified that there defendant stated that he had committed the break-ins, and he knew if he were convicted of the crimes charged his parole would be revoked. Other witnesses testified that defendant admitted his involvement in the other break-ins. Witnesses also testified that they overheard defendant threaten decedent's life on a number of occasions. One of these witnesses testified that defendant made such threats to decedent during an argument about the break-ins.

Investigators also found shoeprints at the scene of the murder. The prints were about eleven inches long and four inches wide and made by coarse ripple-soled shoes. The prints matched the soles of a pair of shoes found by investigators in a search of

the home of defendant's parents where defendant resided until his arrest.

Defendant offered no evidence and relied on evidence adduced on cross-examination of the State's witnesses. This evidence tended to show the following: The eyewitness could not identify defendant as the man he saw outside the grocery the night of the murder. Other than decedent's fingerprints, defendant's fingerprints were only two of eighteen to twenty legible prints found by investigators. A fingerprint found on the sill of the open window at decedent's house did not match defendant's prints. The closet where the vase on which defendant's print was found had been used by defendant when he formerly lived in the Satterwhite home. The shoes with the soles which matched the prints made at the scene of the crime were tied only circumstantially to defendant. Jean Satterwhite's testimony implying that defendant's fingerprint could only have been placed on the cigar box on the night of the murder, was questionable.

The jury found defendant guilty of first-degree murder based on (1) malice, premeditation and deliberation; (2) felony murder by committing the killing while perpetrating an armed robbery; and (3) felony murder by committing the killing while perpetrating a kidnapping. Following a separate sentencing hearing, the jury recommended life imprisonment. On 18 January 1980 Judge Farmer sentenced defendant to life imprisonment. Defendant appealed to this Court as a matter of right pursuant to G.S. 7A-27(a).

*Rufus L. Edmisten, Attorney General, by Thomas B. Wood and Archie W. Anders, Assistant Attorneys General, for the State.*

*Perry, Kittrell, Blackburn & Blackburn by George T. Blackburn, II, for defendant.*

BRANCH, Chief Justice.

[1] Defendant first contends that the trial court erred by admitting testimony concerning the similarity between shoe prints found at the scene of the crime and the soles of a pair of shoes found at the home of defendant's parents where defendant lived. Defendant argues that the passage of time between the crime and

seizure of the shoes, 33 days, and the State's failure to directly tie ownership of the shoes to defendant combine to make the evidence inadmissible. Defendant relies on language in *State v. Bundridge*, 294 N.C. 45, 239 S.E. 2d 811 (1974), which he contends requires "a reasonable or open and visible, connection" between an article of clothing to be introduced and a defendant. *Id.* at 58, 239 S.E. 2d at 820.

While *State v. Bundridge* deals with the admissibility of clothing generally, we recently considered the specific question of admissibility of shoeprint comparisons in *State v. Jackson*, 302 N.C. 101, 273 S.E. 2d 666 (1981). In *Jackson*, we said,

> The admissibility of such evidence is consistent with the rule of relevance which permits the introduction of any evidence which "has any logical tendency however slight to prove the fact at issue in the case." 1 Stansbury, North Carolina Evidence § 77 (Brandis rev. 1973). . . . The weight to be given [the evidence] was a matter for the jury since it was not the sole evidence connecting defendant with the crime. If shoeprints were the only evidence connecting defendant to the crime, then a question of *sufficiency of the evidence* would arise . . . . However, the question raised in this assignment is admissibility of the evidence . . . . [Original emphasis.]

*Id.* at 109, 273 S.E. 2d at 672. This standard is consistent with a full reading of *Bundridge* where, quoting Stansbury, we also said, "The evidence need not bear *directly* on the issue and that the inference to be drawn need not be a *necessary* one." *State v. Bundridge, supra* at 58, 239 S.E. 2d at 820. [Original emphasis.]

Applying these principles to the shoeprint testimony in this case, we find that the State's evidence was admissible. The shoes were seized from defendant's home. One of the permissible inferences from this seizure is that the shoes belonged to defendant. The fact that the jury could draw other inferences from this evidence goes to its weight and not its admissibility.

[2] Defendant next contends that the trial court erred by permitting the State to introduce evidence of defendant's involvement in two prior break-ins at the Satterwhite Grocery. Defendant recognizes that the trial court instructed the jury that the

evidence of the prior crimes was admitted for the limited purpose of showing motive and intent. He argues, however, that the evidence of his involvement in these crimes has no relevance to any motive or intent to kill Satterwhite. He concludes that the evidence was offered solely to show defendant's criminal predisposition and, therefore, was inadmissible.

The general rule is that evidence of prior crimes is inadmissible to demonstrate guilt of the crime charged. *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954); 1 Stansbury, North Carolina Evidence § 91 (Brandis rev. 1973). Two of the recognized exceptions to this rule, however, permit the admission of evidence of prior crimes where the prior crimes indicate the motive or intent of the defendant to commit the crime charged. *State v. McClain*, *supra*; 1 Stansbury, North Carolina Evidence § 92 (Brandis rev. 1973). *State v. Birchfield*, 235 N.C. 410, 70 S.E. 2d 5 (1952), is the leading case indicating the extent to which evidence of prior crimes is admissible to show motive or intent. In *Birchfield* the defendants were charged with assault with intent to kill inflicting serious bodily injury. The State introduced evidence that six weeks prior to the assault for which they were being tried, defendants had been charged by the victim with another shooting. The first charge was pending at the time of the second shooting. This Court held that evidence of the first shooting was admissible at the trial for the second shooting because it "had a logical tendency to show intent and motive on the part of the defendants." *Id.* at 415, 70 S.E. 2d at 8.

In instant case, one of the State's theories was that the victim was killed to prevent his testifying against defendant on the prior break-ins. To support this theory the State introduced evidence of the following: The victim had been subpoenaed to testify before a Vance County Grand Jury about one of the break-ins. Defendant and victim had argued over defendant's involvement in the break-ins, and defendant had threatened the victim's life during the argument. The court reporter at defendant's previous trial on the same murder charge testified that defendant admitted at the trial that he realized if he were convicted of the break-ins then his parole on prior offenses would probably be revoked.

We hold that the evidence of defendant's involvement in prior crimes had some logical tendency to indicate defendant's

motive to commit the crime for which he was on trial, and, therefore, the evidence was admissible.

[3] Defendant's final assignment of error is that the trial judge failed to summarize some evidence defendant adduced on cross-examination which defendant specifically requested to be included in the court's recapitulation of the evidence. Defendant's request concerned certain evidence elicited from Jean Satterwhite. Miss Satterwhite's testimony about the cigar box with defendant's fingerprint provided the key link to the inference that the print could only have been made on the box the night of the murder, thus placing defendant at the scene of the crime. Defendant sought recapitulation of the following evidence:

> 1. The defendant through cross-examination of Jean Satterwhite offered further evidence tending to show

> > A. That March 10, 1979 was on a Saturday rather than a Friday as the witness has testified to on direct examination.

> > B. That Joe Cocherall, according to his withholding records, did not work during the first quarter of 1979 at Satterwhite's Grocery. That she could not remember when he did start work.

> > C. That defendant, through cross-examination of the witness Berry offered . . . further evidence tending to show that he, Berry, processed the cigar box in Satterwhite's Grocery on the floor near the office and packed the same away. That Jean Satterwhite was not present during the time.

The trial judge denied defendant's request.

The law defining the trial judge's duty to recapitulate evidence favorable to defendant is governed by this Court's interpretation of G.S. 15A-1232, which states "In instructing the jury, the judge must declare and explain the law arising on the evidence. He is not required to state the evidence except to the extent necessary to explain the application of the law to the evidence." In *State v. Sanders*, 298 N.C. 512, 259 S.E. 2d 258 (1979), we held that the judge's failure to recapitulate evidence favorable to defendant violated this statute. In *State v. Moore*,

301 N.C. 262, 271 S.E. 2d 242 (1980), we further defined the nature of the requirement that the trial judge recapitulate evidence favorable to defendant. We said,

> The language of the statute [G.S. 15A-1232] and our prior decisions interpreting it require the court to summarize the evidence of both parties only *to the extent necessary to explain the application of the law thereto.* [Original emphasis.] In *Sanders* the evidence elicited on cross-examination and presented in the State's case which was favorable to defendant was substantive evidence which tended to exculpate defendant . . . . The trial judge could not have adequately explained the application of the law in the case without mentioning this evidence. . . . [The evidence in the present case] is all testimony which tends to impeach or show bias in the State's witnesses. It is not substantive in nature and would not clearly exculpate defendant if believed. The capable trial judge was thus able to adequately relate the application of the law to the evidence without mentioning this testimony.

*Id.* at 277-78, 271 S.E. 2d at 251-52.

*Sanders* is clearly distinguishable from *Moore* in that *Sanders* involved the summarization of evidence of a statement made to police officers by the defendant and other evidence adduced on cross-examination which tended to exculpate the defendant. Conversely, the evidence in *Moore* which the trial judge failed to summarize tended only to impeach the witness and was not in itself exculpatory.

Here defendant's first two requests for summarization of evidence relate to the reliability of the memory of the witness Jean Satterwhite. Specifically, defendant seeks recapitulation of testimony that at trial during the week of 7 January 1980 the witness Satterwhite could not remember whether 10 March 1979 was on a Friday or a Saturday and that she could not remember whether a certain person worked at Satterwhite's store during the first quarter of 1979.

Defendant's third request for summarization of evidence related to the witness Satterwhite's identification of a cigar box upon which an incriminating fingerprint was found. The witness testified on direct examination that Exhibit 21 was the cigar box

kept in the safe at Satterwhite's store and that it was the cigar box lying on the floor when she entered Satterwhite's store on the morning of 25 May 1979. On cross-examination, she stated that she saw S.B.I. Agent Berry initial the box.

Agent Berry also identified Exhibit 21 as the cigar box found on the floor on the morning of 25 May 1979 and testified that he found a fingerprint matching one of defendant's fingerprints on the cigar box. He further stated that the witness Satterwhite was not present when he processed the box. Defendant requested summarization of the contradictory evidence presented by the testimony of Agent Berry.

It is clear that the evidence which defendant sought to have summarized was brought out on cross-examination for the purpose of impeaching the witness Jean Satterwhite and showing that she was biased. The purpose of impeachment is to reduce the credibility of the witness so that the jury will give less weight to his testimony in deciding the ultimate facts of the case. 1 Stansbury's North Carolina Evidence (Brandis rev. 1973) § 38.

The record discloses that the trial judge fully recapitulated all substantive evidence elicited on cross-examination, and therefore we are not faced with the question of whether the judge gave equal stress to the evidence of the State and defendant. Since none of the evidence which defendant sought to have summarized was substantive evidence which would exculpate defendant, the trial judge was not required to summarize this evidence in order to explain and apply the law to the evidence in this case. *State v. Moore, supra.*

We note in passing that counsel fully and strongly argued to the jury his contentions concerning the weight which should be given the testimony of the witness Jean Satterwhite.

This assignment of error is overruled.

Our careful examination of this entire record discloses no error warranting that the verdict or judgment be disturbed.

No error.