STATE OF NORTH CAROLINA v. HORACE LEE METCALF

No. 7330SC142

(Filed 11 April 1973)

**Criminal Law § 53; Homicide § 15— medical testimony as to possibility of
suicide — invasion of province of jury — error**

> The trial court in a murder case committed prejudicial error when
> it allowed the doctor who examined deceased immediately after her
> death to express an opinion that it was not possible for the deceased
> to have shot herself, since that opinion answered the exact issue which
> the jury was to determine.

APPEAL by defendant from *Falls, Judge,* 15 October 1972
Session of SWAIN County Superior Court.

Defendant was tried on a proper bill of indictment charging
him with the first-degree murder of his wife, Josie Metcalf, on
29 April 1972. The defendant was placed on trial for murder in
the second degree or a lesser offense. He pleaded not guilty, and
the jury found him guilty of manslaughter. From a sentence of
imprisonment, the defendant appealed.

The State's evidence tended to show that on the night of
29 April 1972 at about 11:30 p.m. a Swain County Deputy
Sheriff went to the Metcalf home and found Mrs. Metcalf lying
on a bed. She had two puncture wounds on the left side of her
neck, and she was dead. A .22 caliber revolver, in its holster,
was lying on the pillow beside her.

The pistol was designed to hold six bullets. In it were
found five live cartridges but only one spent cartridge. Although
Mrs. Metcalf had two wounds in her neck, a second empty
cartridge was never found.

Dr. William E. Mitchell testfied that he examined Mrs.
Metcalf at about 12:30 a.m. or 1:00 a.m. on 30 April 1972. He
observed two "wounds of entry for a low velocity small gunshot"

State v. Metcalf

on the left neck and jaw, and one wound on the right neck which, "I would characterize as an exit wound." Dr. Mitchell found one bullet in Mrs. Metcalf's body. Another bullet was found later by officers on the bed on which Mrs. Metcalf's body was found.

A witness, admitted without objection as a firearms expert, testified that the bullet found in the bed was fired from the pistol found on the bed; that the empty shell case found in the pistol was also fired from that pistol; and that the shells were Remington, .22 caliber shorts. The expert testified that the bullet taken from Mrs. Metcalf's body was mutilated and distorted so that it could not be determined whether it was fired from the pistol. However, he did testify that the mutilated slug was a .22 caliber short projectile, and that, "In my opinion that bullet is probably Remington ammunition due to the copper-nickel coating and because it compares favorably with known Remington bullets pulled from a live round. I cannot, however, state beyond a reasonable doubt that Remington made this bullet; it could be another brand."

In his testimony, Dr. Mitchell also stated:

"I feel that the deceased died from hemorrhage and strangulation as a result of injuries from two gunshot wounds to the neck. Either of the wounds, I think, could have caused death as each wound cut major arteries."

The State had called Dr. Mitchell as its first witness, and propounded to him a hypothetical question. There was no evidence in the case at that time except the testimony of Dr. Mitchell himself; and defendant objected to the question, which objection was sustained. After other witnesses had testified, Dr. Mitchell was recalled, and asked the following question:

"Dr. Mitchell, on yesterday, the State propounded a hypothetical question to you; at the conclusion of that hypothetical question, the State asked you the following question: Based upon the foregoing findings, if the jury should so find, and beyond a reasonable doubt, do you have an opinion satisfactory to yourself, sir, whether or not the deceased, Josephine Metcalf, could have shot herself twice? Do you have such an opinion, Doctor?"

In response to this question, Dr. Mitchell testified that, "I feel that she would have been unable to shoot herself twice."

*Attorney General Robert Morgan by Attorney Ruth G. Bell for the State.*

*McKeever, Edwards, Davis & Hays by George P. Davis, Jr. for the defendant appellant.*

CAMPBELL, Judge.

Defendant contends that Dr. Mitchell's opinion was improperly admitted because it was based on facts not in evidence (that the two bullets were fired from the pistol found next to the body), and that the question asked on recall was different from the question asked originally.

We agree that the opinion was improperly admitted, but for a different reason: whether the hypothetical question was or was not properly phrased, the witness may not testify that the deceased could not have shot herself. *State v. Carr,* 196 N.C. 129, 144 S.E. 698 (1928).

In *Carr* the defendant was convicted of manslaughter in the shooting death of her husband. The deceased had one bullet wound two inches above his right eye; the bullet traveled downward. There were no powder stains on the body. Defendant testified that the deceased had shot himself.

A medical expert who examined the body testified, and answered the following question:

> " 'Q. From the position the body was lying in, from your examination of it, have you an opinion as to whether that wound could have been made by a gun in the hands of this deceased or not? A. I don't think it is possible for the deceased to have fired the gun and made the wound that I saw.' "

The court held that the answer was objectionable because it did not follow a question outlining the facts observed and relied on by the witness in forming his opinion. Additionally, the court said the answer was ultimately inadmissible in any event because it answered the exact issue which the jury was to determine.

> " . . . But the exception to the general rule which excludes opinion evidence is subject to the limitation that the opinion or inference of the witness must not be an answer to the exact issue which the jury is to determine. When the

witness testified that he did not think it possible for the deceased to have fired the gun and to have made the wound he necessarily testified in effect that in his opinion the deceased did not kill himself. True, the 'exact issue' was whether the defendants are guilty, but if the deceased killed himself the conclusion that the defendants did not kill him would necessarily follow. . . . " *State v. Carr, supra,* at 132.

In a homicide prosecution, where it is contended that the deceased killed himself, it is proper for the State to present evidence from which *the jury* may infer that the deceased did not kill himself. *State v. Atwood,* 250 N.C. 141, 108 S.E. 2d 219 (1959).

We agree with the State that the evidence was sufficient to withstand defendant's motion for nonsuit. However, we cannot say that the error of the court in allowing into evidence the testimony of Dr. Mitchell to the effect that deceased could not have committed suicide was harmless error. We think it was sufficiently prejudicial to warrant a new trial.

New trial.

Judges BRITT and MORRIS concur.