STATE OF NORTH CAROLINA v. ROGER WILLIAMS

No. 7723SC423

(Filed 16 November 1977)

1. **Criminal Law § 91.4— absence of counsel—motion for continuance—denial proper**

The trial court did not err in denying defendant's motion for continuance made on the ground that defendant's retained counsel was engaged in a trial in another county where the case had been continued once before at counsel's re-

quest because of a similar conflict; defendant was represented at trial by two attorneys who were proven advocates of many years' experience; and the two attorneys had been employed by defendant for several months prior to the trial and had every reason to be thoroughly familiar with the case.

2. **Criminal Law § 169— testimony excluded—failure to show what testimony would have been—no prejudice shown**

Where the record fails to show what witnesses' answers to questions would have been had they been permitted to testify, defendant has failed to show prejudicial error.

3. **Homicide § 15.4— psychiatrist's testimony—invasion of province of jury**

The trial court did not err in sustaining the State's objection to questions asked a psychiatrist as to whether he considered defendant a reliable inform-ant and whether he had an opinion as to what might or could have prompted defendant to kill deceased, since the evidence was properly excluded on the ground that it invaded the province of the jury.

4. **Homicide § 26— unlawfulness—guidelines in jury instructions unnecessary**

Defendant's contention that the holding of *State v. Hankerson*, 288 N.C. 632, should be further refined to disallow an inference of unlawfulness unless appropriate guidelines are provided to the jury is without merit.

APPEAL by defendant from *Crissman, Judge.* Judgment entered 7 January 1977 in Superior Court, WILKES County. Heard in the Court of Appeals 18 October 1977.

Upon a plea of not guilty, defendant was tried on a bill of in-dictment charging him with the murder of Jimmy Lee Wilson on 11 September 1976. Evidence presented by the State tended to show:

Deceased was the former husband of Brenda Williams, wife of defendant. Deceased and Brenda were married on 1 March 1965 and had one child, Richard. Following a custody hearing, an order was entered on 9 September 1976 awarding Richard's custody to deceased effective at 12:00 noon on Saturday, 11 September 1976.

On that date deceased, his wife and their child, together with David and Helma Wilson, went to the residence of defendant to pick up Richard. The Wilsons were in the front seat while de-ceased, his wife and child were in the backseat. Upon stopping the automobile David Wilson got out on the driver's side and ob-served defendant and one Plato Shepherd sitting in chairs in the carport.

Defendant jumped up and with a high-powered rifle in his hand ran toward the car and said, "You son of a bitch, I told you

not to step on my property". Deceased, who was still in the backseat of the automobile said, "Sir, I am not on your property". Before deceased finished making that statement defendant fired the rifle, hitting deceased in his neck. Deceased said nothing to defendant except the statement aforesaid and never got out of the car.

Defendant then pointed the rifle at Helma Wilson, who was outside of the automobile, and said, "Get the hell out of here or I will kill you all". The Wilsons got back into the car and drove away. Deceased died from the gunshot wound inflicted.

Defendant presented evidence tending to show:

He met Brenda in the fall of 1972 while she was separated from deceased. Brenda and deceased were divorced in January of 1973 and defendant married her in March of 1973.

On 22 July 1973 deceased told defendant that if he ever whipped Richard, or touched him or spoke harshly to him, deceased would kill defendant even if he had to spend 20 years of his life in jail. On several occasions after that defendant tried to carry on casual conversations with deceased, but as deceased was talking there was something about his tone of voice to indicate that he "was ready to explode any minute".

In August of 1976 defendant asked his wife to write a letter to deceased telling him not to come to their home. On the day of the shooting, when the car drove up, defendant observed deceased in the car. Defendant picked up his rifle and approached the car with the intention of talking to deceased. Defendant thought that deceased had a pistol and was going to shoot him, thereupon, defendant jerked his rifle around and fired, hoping it would give him a chance to get away.

On cross-examination defendant stated that the only threats made against him by deceased were the incidents in July of 1973, an incident around Christmas of 1973 in which deceased allegedly followed Brenda, a telephone call by deceased to Brenda in August of 1976, and the appearance at defendant's home on the day in question. Defendant admitted that deceased never touched him or shot at him.

On 9 August 1976, at defendant's request, Brenda wrote deceased a letter telling him to stay away from defendant's prop-

erty. Thereafter deceased telephoned Brenda and stated, ". . . I can shoot too, and I can shoot pretty damn good. . . ."

The jury returned a verdict finding defendant guilty of second-degree murder and from judgment imposing a prison term of not less than 30 nor more than 35 years, he appeals.

*Attorney General Edmisten, by Associate Attorney Norma S. Harrell, for the State.*

*Winston, Coleman and Bernholz, by Barry T. Winston, for defendant appellant.*

BRITT, Judge.

[1] Defendant assigns as error the failure of the trial court to grant his motion for a continuance of the trial on the ground that his principal attorney was engaged in the trial of another case and could not be present.

On 22 December 1976 Attorney Barry T. Winston of Chapel Hill, N.C., filed a motion in this cause stating that he was counsel of record for defendant; that he was advised that the district attorney had calendared this case for trial on Monday, 3 January 1977; that defendant was free on bond; that he (Attorney Winston) had been appointed to represent one Haskins in Orange County Superior Court for attempted armed robbery; that Haskins was in jail, unable to make bond, and did not want a continuance of his case; that the Haskins case was calendared for trial in Orange County on 3 January 1977; that this case (Williams) had been continued once before at counsel's request because of a similar conflict; that the district attorney had refused to agree to a further continuance; that counsel would be able to appear at the 14 February 1977 Session of Wilkes Superior Court and would be ready for trial at that time.

The case was called for trial by the district attorney during the week of 3 January 1977, evidently on 5 January 1977. At that time defendant's attorneys, Messrs. Max Ferree and John Hall of the Wilkes County Bar, were present. Mr. Ferree asked for a continuance on the grounds set forth in Mr. Winston's motion. He stated that he had talked with Mr. Winston over the telephone the night before; that Mr. Winston advised him that the Haskins trial was in its second day and would probably consume the re-

mainder of the week. Mr. Ferree further stated that defendant's decision to employ Mr. Winston was without any suggestion from Mr. Hall or him, but that they readily agreed for Mr. Winston to appear with them in the case.

The district attorney opposed the motion for continuance, stating that the case had been continued once before on the same grounds. He pointed out that defendant had able representation in Messrs. Ferree and Hall; that this was the fourth time witnesses had travelled 197 miles to testify in the case, at considerable financial loss to them.

After stating that he felt that defendant was ably represented by Messrs. Ferree and Hall, the trial judge denied the motion for continuance.

Included in the record on appeal is an affidavit by Judge Hobgood, dated 4 April 1977, stating that he was the presiding judge at the 3 January 1977 Session of Orange Superior Court; that the Haskins trial began on the first day of the session and ended on Friday; that on Wednesday, 5 January, at the request of Mr. Winston, he attempted to call Judge Crissman on the telephone; that the lady who answered the telephone advised that Judge Crissman was on the bench; that he requested the lady to write Judge Crissman a note informing him of the call and that Mr. Winston was engaged in the trial of a case in Orange County; and that the lady returned to the telephone a short while later and stated that Judge Crissman said there "was no problem", that he was proceeding with the Williams trial without Mr. Winston.

Also included in the record is an affidavit by Attorney Winston dated 4 April 1977 stating, among other things, that he was privately employed to represent defendant Williams on 4 October 1976; that he appeared at a preliminary hearing on 15 October 1976; that although Messrs. Ferree and Hall were also employed to represent defendant, neither of them had the opportunity to review his file in the case or the benefit of interviews he had conducted with numerous witnesses.

Although the record does not reveal just when Messrs. Ferree and Hall were employed in the case, all indications are that they were employed prior to the time Mr. Winston was employed.

"A motion for continuance is ordinarily addressed to the sound discretion of the trial court and its ruling thereon is not subject to review absent abuse of discretion. *State v. Baldwin*, 276 N.C. 690, 174 S.E. 2d 526 (1970); *State v. Stinson*, 267 N.C. 661, 148 S.E. 2d 593 (1966). However, if the motion is based on a right guaranteed by the federal or state constitution, the question presented is one of law and not of discretion and the decision of the court below is reviewable. *State v. Phillip*, 261 N.C. 263, 134 S.E. 2d 386, *cert. denied* 377 U.S. 1003, 12 L.Ed. 2d 1052, 84 S.Ct. 1939 (1964) . . . ." Justice Huskins in *State v. Miller*, 288 N.C. 582, 587, 220 S.E. 2d 326, 331 (1975).

Defendant argues that since he is financially able to employ counsel of his choice, he has a constitutional right to be represented by any duly licensed attorney he might employ. Assuming, *arguendo*, that this is *generally* true, we think there have to be certain limitations. Were the right unlimited, conceivably all persons charged with offenses in North Carolina, or within a given area of the State, and able to employ their own counsel, could agree to employ one particular attorney and thus completely frustrate the trials of criminal cases.

We do not believe this is a right without limitation. We think a reasonable line must be drawn between the rights of defendants to be represented by counsel of their choice, and the rights of society to have the many criminal courts of the State operated with a reasonable degree of efficiency. That being true, considerable discretion has to be vested in the trial judge who is on the scene and has the superior vantage point to view and consider the merits of a particular case.

As of the time of the trial of the case at hand, Judge Crissman had presided over many sessions of criminal court in Wilkes County. He was well acquainted with the various lawyers at that bar, particularly with Messrs. Ferree and Hall, and was well qualified to pass upon their abilities to provide defendant with proper representation. While another judge might have ruled differently on defendant's motion for a continuance, we fail to perceive that Judge Crissman abused his discretion or deprived defendant of his constitutional right to be represented by competent counsel at his trial.

We think the case at hand is easily distinguished from the recent case of *State v. McFadden*, 292 N.C. 609, 234 S.E. 2d 742

(1977), cited by defendant. In that case the Supreme Court ordered a new trial where the trial court denied defendant's motion for a continuance on the ground that defendant's retained counsel was engaged in the trial of a case in federal court. In *McFadden*, it was shown that on the day the case was set for trial retained counsel's junior associate appeared and moved for a continuance; that the court ordered the trial to proceed, requiring said associate to represent defendant although he had practiced law only 18 months, had previously tried only one jury case, knew nothing about the case until 90 minutes before trial, and defendant insisted on his retained counsel being present. In the case at hand the two attorneys who represented defendant at trial were proved advocates of many years' experience, who had been employed by defendant for several months prior to the trial and had every reason to be thoroughly familiar with the case.

Defendant's first assignment of error is overruled.

[2]   Next, defendant assigns as errors the trial court's exclusion of evidence tending to show the attitude of deceased as perceived by defendant and the number of occasions on which deceased had assaulted Brenda. We find no merit in these assignments. The record fails to disclose what the answers to the questions would have been, therefore, defendant has failed to show prejudicial error. *State v. Miller, supra.*

[3]   By the next assignment of error argued in his brief, defendant contends the court erred in sustaining the State's objection to a question asked Dr. Rollins, a psychiatrist, as to whether he considered defendant a reliable informant. We find no merit in this assignment. We think the evidence was properly excluded on the ground that it invaded the province of the jury, it being their function to determine the credibility of a witness. *See State v. Carr*, 196 N.C. 129, 144 S.E. 698 (1928); *State v. Metcalf*, 18 N.C. App. 28, 195 S.E. 2d 592 (1973).

By his next assignment of error, defendant contends the trial court erred in excluding opinion testimony by Dr. Rollins as to what might or could have prompted defendant to kill deceased. We find no merit in this assignment.

Defense counsel propounded to Dr. Rollins a long hypothetical question which concluded by asking if he had an opinion as to what might or could have prompted defendant to kill

deceased. In the absence of the jury Dr. Rollins replied that in his opinion defendant might or could have been acting out of fear of deceased, that defendant's perception and judgment might or could have been impaired by the stress of the situation, and that defendant might or could have felt that he was acting in self-defense. Here again we think the answer would have invaded the province of the jury and that the trial court did not err in excluding the testimony. *State v. Carr, supra.*

Defendant assigns as error the following instruction to the jury:

> "If the State proves beyond a reasonable doubt that the defendant intentionally killed Jimmy Lee Wilson with a deadly weapon or that he intentionally inflicted a wound upon Jimmy Lee Wilson with a deadly weapon that proximately caused his death, you may but you need not infer, first, that the killing was unlawful and, second, that it was done with malice, and if nothing else appears the defendant would be guilty of second degree murder."

We find no merit in this assignment.

[4] Defendant argues that the holding of *State v. Hankerson*, 288 N.C. 632, 220 S.E. 2d 575 (1975), should be further refined to disallow an inference of unlawfulness unless appropriate guidelines are provided to the jury. We find this argument unpersuasive and hold that the instruction was free from error.

Finally, by the last assignment of error argued in his brief, defendant contends the court in its jury charge did not properly correlate the defendant's apprehension of death or great bodily harm with the evidence of the violent character of the deceased, and the evidence of prior threats made by the deceased toward the defendant. Suffice it to say, we have carefully reviewed the jury charge relating to this contention but conclude that the charge was not erroneous and that the assignment is without merit.

For the reasons stated, in defendant's trial and the judgment entered, we find

No error.

Judges HEDRICK and MARTIN concur.