STATE OF NORTH CAROLINA v. MICHAEL EUGENE HUNT

No. 62A81

(Filed 3 March 1982)

**1. Criminal Law § 102.6— district attorney's argument to jury—proper**

Where the sum and substance of a district attorney's argument was that the testimony of the State's chief witness was credible in light of the overall facts and circumstances of a murder as depicted and corroborated by other independent evidence, there was no error or impropriety in it.

**2. Criminal Law § 53.1— expert testimony—suicides committed by slashing wrists**

Where defendant failed to make a specific objection about a doctor's expertise in identifying wounds which were characteristic of a suicide, and where it was clear that the doctor was properly qualified to state an opinion as to whether the slashing marks he observed on deceased were similar to other self-inflicted wounds of this type which he had seen before, the trial court did not err in allowing the doctor to render an opinion about suicides committed by slashing the wrists.

**3. Criminal Law § 53.1— medical expert testimony—opinion concerning wounds of victim—relaxation of rules governing medical expert opinion**

A doctor did not state an opinion upon the "ultimate" issue concerning the commission of a homicide or a suicide when he testified that the body of the deceased did not bear the customary "hesitation marks" which he had personally observed in his examination of other persons who had attempted suicide by slashing their wrists. Further, there is some question about the continuing validity of *State v. Carr*, 196 N.C. 129 (1928) in light of more recent authoritative decisions of this Court where the rules governing expert medical opinion have been substantially relaxed and expanded.

**4. Criminal Law § 34.4— evidence of other offenses—admission proper**

The trial court did not err in admitting evidence of (1) defendant's intent to rob the deceased just two weeks prior to his death, (2) defendant's assault upon a young girl who refused to assist him in an earlier larcenous plan, and (3) defendant's aiding and abetting his girlfriend in her flight from prosecution after her release from jail upon the bond arranged by defendant the day following the murder since the offenses variously tended to prove defendant's motive, intent and design in committing the murder. Further, admission of evidence about defendant's attempted suicide in jail and his escape and flight therefrom prior to trial was admissible as implied admissions of guilt.

**5. Criminal Law § 42.4— identification of weapons connected with crime**

There was no error in the admission of a pocketknife and a .25 caliber pistol since both items were properly and positively identified by witnesses at trial.

ON appeal by defendant as a matter of right from the judgment of *Allsbrook, Judge*, entered at the 15 September 1980 Criminal Session, VANCE Superior Court. Defendant was charged in an indictment, proper in form, with the first degree murder of Walter Ray. Defendant pleaded not guilty. The jury subsequently found him guilty as charged. Upon the jury's recommendation at the sentencing phase, the trial court imposed the punishment of life imprisonment for defendant's murder conviction.

Viewing it in its most favorable light with the benefit of all reasonable inferences, the State's evidence tended to show the following. The deceased, Walter Ray, lived alone in a trailer in Henderson, North Carolina. Ray was an alcoholic who sold whiskey from his trailer. He usually kept large sums of cash on his premises.

Prior to 26 February 1979, defendant had been to Ray's trailer at least two times. On one particular occasion, that of 21 February 1979, defendant, his girlfriend and three teenagers went to Ray's trailer where they all drank and watched television for three hours. During the course of that evening, defendant tried to coax one of his female teenaged companions into taking Ray back to the bedroom and keeping him "occupied" so he could "rip off" Ray. The girl refused, whereupon defendant grabbed her from behind and beat her in the face.

Five days later, defendant returned to the trailer intending to steal some money from Ray for the bail of his girlfriend. [She had been arrested on a probation violation and jailed in the interim. Her bond had been set at $500.00.] As Ray was closing up his (illegal) residential bar in the early morning hours, defendant put on some gloves, walked up behind Ray, grabbed him and put a knife against his throat. Defendant then forced Ray back to the bedroom. Defendant searched a closet and removed approximately $400.00 and a pistol from it. As defendant prepared to shoot Ray with the pistol, Ray begged him not to kill him that way. Defendant agreed to employ another murderous method.

Defendant forced Ray to drink a pint of liquor and a couple of beers and allowed him to take some pills. When Ray became weak from the ingestion thereof, defendant slashed one of Ray's forearms near the wrist with a knife. Later he slashed him again near the original cut and waited while Ray slowly bled to death

from the wounds. Defendant then left the trailer carrying the pistol and the money with him.

Ray's body was discovered by a friend later that same night. The deceased was lying on his bed and appeared to be "cut all to pieces." A pocketknife was in his right hand, and his mouth contained the pink-colored residue of some sort of tablet. The investigating officers initially concluded that the death-causing wounds were self-inflicted.

On the day following Ray's death, defendant paid $40.00 to a professional bondsman, and his girlfriend was released from jail. A day or two later, defendant visited William Thomas Edwards and sold him a .25 caliber pistol. Defendant told Edwards that he had taken the gun from Ray and further informed Edwards that he had killed Ray. Defendant explained to Edwards the precise details concerning the murder's accomplishment and the reasons for its commission. Edwards did not, however, convey this incriminating information to law enforcement officials until 8 August 1979. [At that time, Edwards was serving a thirty-day jail sentence.]

Upon the foregoing information, defendant was subsequently arrested on 20 August 1979. He escaped from jail prior to his indictment in October 1979. He was eventually recaptured and brought to trial in September 1980.

Defendant offered no evidence in his own behalf.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Charles M. Hensey for the State.*

*George T. Blackburn II for the defendant-appellant.*

COPELAND, Justice.

Defendant brings forward five arguments in his brief wherein he contends that he is entitled to a reversal of his conviction for the trial court's alleged errors in admitting various types of evidence or testimony. To the contrary, we find that, in each instance complained of, the challenged matters were properly admitted for the jury's consideration. We further conclude that defendant received a fair trial free from prejudicial error.

I.

[1] Defendant maintains that, in his closing argument to the jury, the district attorney improperly gave unsworn testimony which tended to bolster the credibility of the chief prosecution witness, William Thomas Edwards. We find no merit in defendant's position. First, defendant's complaint on appeal is not well taken when he failed to make an appropriate objection at trial and did not thereby afford the judge an opportunity to correct the alleged impropriety before the case was submitted to the jury. *See State v. Morgan*, 299 N.C. 191, 207, 261 S.E. 2d 827, 837, *cert. denied*, 446 U.S. 986, 100 S.Ct. 2971, 64 L.Ed. 2d 844 (1980); 4 Strong's N.C. Index 3d, Criminal Law § 102.3 (1976). Second, the record prepared by defendant does not include the entire content of the closing arguments made by both sides, and it is therefore difficult for us to examine, fully and fairly, the context of the isolated statements presented for our determination of the existence of possible prejudice. *See State v. Hunter*, 297 N.C. 272, 277, 254 S.E. 2d 521, 524 (1979). Third, even putting aside the foregoing inadequacies in the record, it is clear beyond the shadow of any doubt that the district attorney's remarks did not transcend the established boundaries of permissible jury argument. As our Court stated in *State v. Lynch*, 300 N.C. 534, 551, 268 S.E. 2d 161, 171 (1980):

> Argument of counsel is largely within the control and discretion of the trial judge. Counsel must be allowed wide latitude in the argument of hotly contested cases. Counsel for both sides are entitled to argue to the jury the law and the facts in evidence and all reasonable inferences to be drawn therefrom. *State v. King*, 299 N.C. 707, 264 S.E. 2d 40 (1980). . . . (Citation omitted.)

Here, the sum and substance of the district attorney's argument was that the testimony of the State's chief witness was credible in light of the overall facts and circumstances of the murder as depicted and corroborated by other independent evidence. We can perceive no error or impropriety in this. *See State v. Thompson*, 293 N.C. 713, 239 S.E. 2d 465 (1977); *see also State v. Mullis*, 233 N.C. 542, 64 S.E. 2d 656 (1951).

## II.

Defendant's next assignment of error concerns the admission of medical opinion testimony concerning the nature of self-inflicted wounds. In pertinent part, Dr. Michael Jones testified, and defendant objected and took exception thereto, as follows:

Q. Prior to February 26, 1979, have you had an occasion to examine and study the death of persons as a result of slashing their wrists?

MR. SMITH: Object, Your Honor.

THE COURT: Overruled.

A. No, sir, this is the first successful case of sui—well, death by slashing the wrist that I have encountered. . . .

Q. Now, Dr. Jones, have you had an occasion prior to February 26, 1979 to examine patients who have slashed their wrists?

MR. SMITH: Object, Your Honor.

THE COURT: Overruled.

A. Yes, I have.

Q. (Mr. Waters) And in the examination of patients who have slashed their wrists, have you observed anything different in your observations of those patients as compared to your observation of Walter Ray?

MR. SMITH: Object, Your Honor.

THE COURT: Well, sustained as to the form of the question. Restate your question.

Q. (Mr. Waters) Dr. Jones, in your practice of medicine, have you had an occasion to examine patients who have attempted suicide by slashing their wrists?

MR. SMITH: Object, Your Honor.

THE COURT: Overruled.

EXCEPTION NO. 22.

A. Yes.

Q. (Mr. Waters) And in your examination of those persons, have you observed wounds which are associated with that effort that you did not observe in the body of Walter Ray?

A. Yes.

Q. And what sort of wounds have you observed in your experience of persons who have attempted to commit suicide by slashing their wrists that you did not observe about the body of Walter Ray?

A. Most people who try to end their life by slashing their wrist with any variety of objects will have a series of small shallow superficial marks or cuts that we call hesitation marks. It is most unusual for someone to be able to successfully commit suicide this way in spite of widespread popular belief. These types of marks were not present in Mr. Ray.

[2] Defendant contends that Dr. Jones "was not sufficiently qualified as an expert to render an opinion about suicides committed by slashing the wrist." An objection to a witness's qualifications as an expert in a given field or upon a particular subject is waived if it is not made in apt time upon this special ground, and a mere general objection to the content of the witness's testimony will not ordinarily suffice to preserve the matter for subsequent appellate review. *See* 1 Stansbury's N.C. Evidence § 133, at 431 (Brandis rev. 1973). Defendant failed to make a specific objection about Dr. Jones' expertise in identifying wounds which were characteristic of a suicide. Our Court has adhered to the position that, in the absence of a special request by the defense for qualification of a witness as an expert, such a finding will be deemed implicit in the trial court's admission of the challenged opinion testimony. *State v. Mitchell,* 283 N.C. 462, 196 S.E. 2d 736 (1973); *State v. Perry,* 275 N.C. 565, 169 S.E. 2d 839 (1969). In any event, it is clear in this case that Dr. Jones was, in fact, properly qualified to state an opinion as to whether the slashing marks he observed on the deceased were similar to other self-inflicted wounds of this type which he had seen before. Prior to stating such an opinion, Dr. Jones testified to the following: (1) that he had received his medical degree in 1966 and had completed a four-year residency in anatomic and clinical pathology in 1971; (2) that

he had been licensed to practice medicine in this State in 1974 and had, since that time, engaged in the private practice of pathology; (3) that he was the regional medical examiner in February 1979 when he examined the body of the victim; and (4) that he had previously examined patients who had attempted suicide by slashing their wrists. The fact that Dr. Jones had not examined the body of a person who had *succeeded* in committing suicide through this type of injury did not diminish his general expertise upon the usual characteristics of such wounds.[1] Dr. Jones' lack of actual experience in that respect was merely a factor to be considered by the jury in evaluating the weight and credibility of his testimony.

[3] Defendant additionally argues that admission of the foregoing testimony by Dr. Jones (*supra*) was erroneous because it effectively invaded the province of the jury. It must be noted at once that defendant did not object at trial or enter exception in the record to the precise portion of Dr. Jones' testimony challenged herein. Moreover, it appears that substantially the same evidence was thereafter admitted, again without objection, in the testimony of Dr. Jerome Tift of the office of the Chief Medical Examiner. *See State v. Searles*, 304 N.C. 149, 282 S.E. 2d 430 (1981); *State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976). Despite these obvious waivers of the complaint now presented on appeal, we have elected in our discretion to consider the merit of defendant's contention because of the serious crime involved and the substantial penalty imposed.

To put the matter plainly, defendant believes that Dr. Jones improperly answered the ultimate issue to be decided by the jury in this case, to wit, whether Walter Ray's death was a homicide or a suicide. In his brief, defendant relies solely upon the case of *State v. Metcalf*, 18 N.C. App. 28, 195 S.E. 2d 592 (1973). In *Metcalf*, the expert witness affirmatively stated that, in his opinion, the deceased could not have shot herself twice. The Court of Appeals held that admission of the opinion was error according to this Court's decision in *State v. Carr*, 196 N.C. 129, 144 S.E. 698 (1928). *Carr* was another homicide prosecution in which the defense was suicide. At trial, a medical expert for the State was

---

1. In essence, this fact only tended to demonstrate the relative difficulty in the accomplishment of suicide by this method.

allowed to testify that he did not believe it was possible for the deceased to have fired the gun which inflicted the fatal wound he had examined. In finding this to be reversible error, the Court stated that the expert's answer had invaded the province of the jury and added the admonition that "the opinion or inference of the witness must not be an answer to the exact issue which the jury is to determine." *Id.* at 132, 144 S.E. at 700.

Both *Carr* and its progeny *Metcalf, supra,* are inapposite to the case at bar because Dr. Jones did *not* state an opinion upon the "ultimate" issue concerning the commission of a homicide or a suicide. Although he did say that it was difficult to commit suicide by slashing one's own wrists, Dr. Jones did not attempt to negate, much less affirmatively rule out, the possibility of suicide as an explanation for the victim's death. To the contrary, Dr. Jones only testified that the body of the deceased did not bear the customary "hesitation marks" which he had *personally* observed in his examinations of other persons who had attempted suicide in the same manner. Evidence from which *the jury* may *infer* that the death in question was not a self-inflicted event is entirely competent. *State v. Atwood,* 250 N.C. 141, 146, 108 S.E. 2d 219, 222-23 (1959); *State v. Metcalf, supra,* 18 N.C. App. at 31, 195 S.E. 2d at 594. Defendant's assignment of error is consequently overruled.

Moreover, though we need not decide the point in this case, we would note for future reference that there is some question about the continuing validity of *State v. Carr, supra,* 196 N.C. 129, 144 S.E. 698 (1928), in light of the more recent authoritative decisions of this Court wherein the rules governing expert medical opinion have been substantially relaxed and expanded. *See, e.g., State v. Miller,* 302 N.C. 572, 580, 276 S.E. 2d 417, 422 (1981); *State v. Powell,* 238 N.C. 527, 530, 78 S.E. 2d 248, 250-51 (1953). Admissibility of expert medical opinion is no longer strictly viewed through the narrow focus provided by the technical and vague concepts of invasion of the jury's province and the answer of an ultimate issue; rather, admissibility is evaluated primarily according to whether or not "the witness because of his expertise is in a better position to have an opinion on the subject than is the trier of fact." *State v. Wilkerson,* 295 N.C. 559, 568-69, 247 S.E. 2d 905, 911 (1978); *see State v. Brown,* 300 N.C. 731, 733, 268 S.E. 2d 201, 202-03 (1980). Applying similar standards of admis-

sion, a majority of jurisdictions have held that "the subject of self-inflicted wounds is not one of such common experience that laymen may not be assisted by the opinion of a doctor, who has special knowledge regarding anatomy and injuries to the human body." *State v. Campbell*, 146 Mont. 251, 258, 405 P. 2d 978, 983 (1965); *see* Annot., 56 ALR 2d 1447 (1957). We perceive no *current or defensible* obstacle in our case law to the adoption of that position in North Carolina.

### III.

[4] Defendant makes a sweeping assertion, consisting of two paragraphs in his brief, that the trial court erred in admitting evidence of his commission, or attempted commission, of crimes other than that with which he was actually charged and tried. Our Court has recently reiterated the pertinent principles in this regard in *State v. Shane and Williams*, 304 N.C. 643, 653-54, 285 S.E. 2d 813, 820 (1982):

> By virtue of a sound legal axiom, substantive evidence of a defendant's past, and distinctly separate, criminal activities or misconduct is generally excluded when its only logical relevancy is to suggest defendant's propensity or predisposition to commit the type of offense with which he is presently charged. *State v. McQueen*, 295 N.C. 96, 244 S.E. 2d 414 (1978); 1 Stansbury's North Carolina Evidence § 91 (Brandis rev. 1973). "Logical relevancy" is capably demonstrated whenever such evidence has some bearing upon genuine questions concerning knowledge, identity, intent, motive, plan or design, connected crimes, or consensual illicit sexual acts between the same parties. *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954); 1 Stansbury, *supra*, § 92; *see, e.g., State v. Searles*, 304 N.C. 149, 282 S.E. 2d 430 (1981) (motive, intent); *State v. Freeman*, 303 N.C. 299, 278 S.E. 2d 207 (1981) (identity).

Applying the foregoing rules here, it is obvious that defendant's contentions are specious at best. The evidence concerning defendant's intent to rob the deceased just two weeks prior to his death was competent to show defendant's motive, intent and design in committing the subsequent murder. The testimony about defendant's assault upon the young girl who refused to assist him in his earlier larcenous plan was also admissible as evidence of a

connected crime and defendant's overall violent intent to pursue an evil course of action which eventually culminated in murder. Similarly, evidence that defendant aided and abetted his girlfriend in her flight from prosecution, after her release from jail upon the bond arranged by defendant the day following the murder, properly corroborated the State's other evidence about motive and was additionally admissible as evidence of a connected crime.

Within this same argument heading in his brief, defendant brings forward the unrelated exceptions entered to the admission of evidence about his attempted suicide[2] in jail and his escape and flight therefrom prior to trial. These acts constituted implied admissions of guilt, and evidence of their occurrence was properly introduced. Attempted suicide by the accused: *see State v. Marsh*, 234 N.C. 101, 66 S.E. 2d 684 (1951); *State v. Exum*, 213 N.C. 16, 195 S.E. 7 (1938); Annot., 22 ALR 3d 840 (1968). Flight by the accused: *see State v. Jones*, 292 N.C. 513, 234 S.E. 2d 555 (1977); 2 Stansbury's N.C. Evidence § 178 (Brandis rev. 1973).

### IV.

[5] Defendant assigns error to the admission of two prosecution exhibits, a pocketknife and a .25 caliber pistol, upon the ground that a continuous chain of custody thereof was not adequately demonstrated. The assignments of error are devoid of merit. A deputy sheriff testified that the pocketknife was the same one he had removed from the hand of the deceased during the initial investigation of his death. The witness Edwards testified that the pistol was the same one sold to him by defendant shortly after the murder. Upon proper and positive identifications by these witnesses, both items were correctly admitted as relevant real evidence in the case. *State v. Allen*, 301 N.C. 489, 272 S.E. 2d 116 (1980); *State v. Moore*, 301 N.C. 262, 271 S.E. 2d 242 (1980); *State v. Harbison*, 293 N.C. 474, 238 S.E. 2d 449 (1977).

### V.

Defendant finally contends that the prior statements of two witnesses were erroneously admitted as corroborative evidence

---

2. North Carolina no longer recognizes the common law offense of suicide. G.S. 14-17.1. Thus, testimony about such an act is not properly characterized as evidence of another distinct crime.

because those statements were not consistent with the witnesses' testimony at trial in certain respects. We disagree. *See generally* 1 Stansbury's N.C. Evidence §§ 50-52 (Brandis Rev. 1973).

Defendant did not, by timely objection, direct the trial court's attention to the portions of the corroborative testimony which he now complains of on appeal. The assignment of error thus lacks a sufficient foundation in the record. *See State v. Britt*, 291 N.C. 528, 536, 231 S.E. 2d 644, 650 (1977). In any event, it suffices to say that the disputed prior *consistent* statements contained no prejudicial variations from the testimony at trial, and the differences therein to which defendant alludes were indeed minor and inconsequential in nature. *State v. Moore*, 301 N.C. 262, 274, 271 S.E. 2d 242, 250 (1980); *State v. Easterling*, 300 N.C. 594, 603, 268 S.E. 2d 800, 806 (1980).

## VI.

In conclusion, we recommend that defendant's appellate counsel pay particular attention in the future to Rules 10 and 28 of the N.C. Rules of Appellate Procedure in his preparation of records and briefs submitted to this Court. We have nonetheless carefully considered every argument (or exception) presented in order "[t]o prevent manifest injustice" to the defendant. Rule 2.

Our thorough review of the case discloses no sufficient cause or reason for a new trial or reversal, and the judgment imposed upon defendant's conviction of first degree murder is hereby affirmed.

No error.