State v. Belton

No error.

Judges BECTON and PARKER concur.

STATE OF NORTH CAROLINA v. KENNETH EARL BELTON

No. 8512SC170

(Filed 29 October 1985)

1. **Criminal Law § 34.8— robbery and assault—testimony regarding prior offense —admissible to show identity and common scheme or plan**

In a prosecution for robbery with a firearm and assault with a deadly weapon inflicting serious injury in which defendant was accused of being one of two men to rob and shoot with a shotgun a man who had accepted a ride with them, the trial court did not err by admitting testimony that defendant and an accomplice on a prior occasion had used a shotgun to abduct, rob, and take the automobile of the witness, and that when her car was returned it had been washed and waxed, there were seat covers over part of the seats, the carpet had been shampooed, and there were shotgun pellets in the seats. The evidence was admissible to aid in identifying defendant as a perpetrator of the crime and to show a common scheme or plan, and the court carefully instructed the jury that it could only use the evidence to establish identity and a common scheme or plan. G.S. 8C-1, Rule 404(b).

2. **Criminal Law § 89.10— cross-examination of witness—prior degrading conduct —admissible**

In a prosecution for robbery with a firearm and assault with a deadly weapon inflicting serious injury in which defendant's accomplice testified for defendant, the trial court did not err by permitting the State to cross-examine the accomplice regarding prior statements and whether he had raped a witness for the State who had testified regarding a prior offense involving defendant and the accomplice. G.S. 8C-1, Rules 607, 608.

APPEAL by defendant from *Johnson, E. Lynn, Judge*. Judgment entered 4 October 1984 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 24 September 1985.

Defendant was charged in a proper bill of indictment with robbery with a firearm and assault with a deadly weapon inflicting serious injury. At trial the State offered evidence which tended to show the following facts. On 28 May 1983, James Paul MacNeilly was walking along Bragg Boulevard toward Fort Bragg when two men in a small car stopped and asked him if he wanted

a ride. MacNeilly accepted the ride from the two men, later identified as the defendant and Eugene Saddler. After MacNeilly entered the vehicle, the driver left Bragg Boulevard and turned onto Sycamore Dairy Road. The passenger then pulled a sawed-off shotgun on the victim and demanded his wallet. The victim attempted to grab the gun and get out of the car. As MacNeilly was leaving the car, Saddler shot him in the leg with the shotgun and forced him back into the car. A short time later MacNeilly was forced to leave the car and walk toward some woods. As he was walking toward the woods one of the robbers took his wallet, pocketknife and a money clip containing sixty dollars. As a result of the wound inflicted by the shotgun, MacNeilly spent a week in a Fayetteville hospital and two months at Walter Reed Hospital undergoing treatment, including several skin grafts. The State also presented extensive circumstantial evidence linking the defendant to the automobile and the sawed-off shotgun.

Defendant offered testimony from a number of witnesses who testified that he was at a party when the robbery occurred. Saddler also testified for the defendant. In his testimony he admitted robbing and shooting MacNeilly, but he claimed that the driver of the vehicle was not defendant but an Alvin Jackson.

Defendant was convicted of both charges. The charges were consolidated for judgment, and defendant was sentenced to forty years imprisonment. From this judgment, defendant appealed.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Floyd M. Lewis, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Gordon Widenhouse, for defendant appellant.*

ARNOLD, Judge.

[1] Defendant first contends the trial court erred in denying his motion to limit the testimony of Doris Nunnery regarding a prior offense of the defendant. We disagree.

At trial, after having her proposed testimony reviewed during a motion *in limine*, the State elicited the following pertinent evidence from Doris Nunnery:

Q. Ms. Nunnery, directing your attention to May 22nd, 1983, did you have occasion to see the defendant, Kenneth Belton, on that day?

A. Yes. I did.

Q. And was that at the Dragon Club out at Fort Bragg?

A. Yes. It was.

Q. And how did you travel to the Dragon Club at Fort Bragg?

A. I drove my car.

Q. Ma'am, I show you what has been marked for identification as State's Exhibit Number Five and ask if you recognize that.

A. Yes. I do.

Q. What is State's Exhibit Five?

A. That is my car.

Q. Was it in the parking lot that you first saw Kenneth Belton?

A. Yes. It was.

Q. And who was he with?

A. Eugene Saddler.

Q. And was anybody with you?

A. Yes. My girlfriend, Rebecca White.

Q. And did you have occasion to see a weapon in the possession of Kenneth Belton at that time?

A. Yes. I did.

Q. Can you describe that weapon, please?

A. Kenneth Belton had a hand pistol—a gun—a handgun.

Q. Did you see a weapon in the possession of Eugene Saddler at that time?

A. Yes. He had a sawed-off shotgun.

Q. I show you what has been marked for identification as State's Exhibit Number One and ask if you recognize and can identify that.

A. It appears to be the same gun that Eugene Saddler had that night except it doesn't have tape on it. It was wrapped in black tape.

Q. Now, ma'am, at gunpoint, were you forced to go from the Dragon Club to a wooded area somewhere in Cumberland County?

A. Yes. I was.

Q. Now during the course of that trip from the Dragon Club, who was driving your automobile?

A. Kenneth Belton.

Q. Where was Eugene Saddler at that time?

A. He was in the back seat directly behind me.

Q. And upon arriving at the wooded area, was your automobile taken from you?

A. Yes. It was.

Q. Was that also done at gunpoint?

A. Yes. It was.

Q. And was other property taken from you at that time?

A. Yes.

Q. And that included a purse and clothing and that sort of thing?

A. Yes. It was.

Q. Did Eugene Saddler retain the shotgun the entire time you were in his and Kenneth Belton's presence?

A. No. He did not.

Q. Did Belton ever have that shotgun?

A. Yes. He did.

Ms. Nunnery was also allowed to testify that when her car was returned to her about a week and a half later that it had been washed and waxed, that there were seat covers over a part of the seats, that the carpet had been shampooed and that there were shotgun pellets in the seats. A jury view of the vehicle was conducted following Ms. Nunnery's testimony. At the close of Ms. Nunnery's testimony the court gave the following instructions:

> COURT: Ladies and gentlemen of the jury, first let me give you some instructions in respect to the testimony of Ms. Nunnery.
>
> This evidence was received and received solely for the purposes of showing the identity of the person who committed the crimes charged in this case if, in fact, they were committed.
>
> And further the evidence has been received solely for the purpose of determining whether or not there existed in the mind of this defendant a plan, scheme, system or design involving the crime charged in this case. And it's received for those limited purposes only.

Defendant argues that this evidence was irrelevant, had no probative force regarding any element of the armed robbery or the assault charge, and that its admission was severely prejudicial because it tended to show he had a bad character or a propensity to involve himself in armed robberies and other criminal activities.

Rule 404(b) of the North Carolina Rules of Evidence provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

This is consistent with the North Carolina practice prior to the enactment of the Rules of Evidence. Rule 404, Rules of Evidence, Commentary. *See also State v. Hunt*, 305 N.C. 238, 287 S.E. 2d 818 (1982); *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954).

State v. Belton

The evidence to which defendant objects was admissible to aid in identifying defendant as the perpetrator of the crime. The fact that the car which the defendant stole from Ms. Nunnery was used to later rob Mr. MacNeilly coupled with the fact that the same weapon was used in both offenses is sufficient to establish the relevance of the evidence to show that the same person, namely the defendant, committed both these offenses. The evidence was also admissible to show a common scheme or plan because when a defendant uses a stolen instrumentality to commit a crime, evidence of the instrumentality's theft is admissible to show a plan to commit the subsequent crime. *See, State v. Rich,* 304 N.C. 356, 283 S.E. 2d 512 (1981).

The court carefully instructed the jury that it could only use the evidence to establish identity and a common plan or scheme. The evidence was relevant to show these things, thus, defendant's contentions are without merit.

[2] Defendant also contends the court erred by allowing the State to cross-examine Mr. Saddler regarding whether he had raped Doris Nunnery and about prior statements that he had made at a previous trial. In this question defendant brings forth and attempts to argue two assignments of error based upon twenty-one (21) exceptions. An examination of the record reveals that seventeen of these exceptions are not supported by objections to the question or a motion to strike the answer. In this State, it has long been the rule that an objection to, or a motion to strike, an offer of evidence must be made contemporaneously with the complained of action; and unless such objection was made, the party is held to have waived the right to bring the objection forth on appeal. *See, State v. Banks,* 295 N.C. 399, 245 S.E. 2d 743 (1978). Therefore, defendant has waived his right to have us consider his contentions with regard to the exceptions not based upon contemporaneous objections or motions to strike. The remaining four exceptions deal with objections to questions regarding Saddler's rape of Ms. Nunnery and to questions regarding his prior testimony. Prior bad acts and prior inconsistent statements are proper subjects for cross-examination. *See* Rules 607, 608 of the North Carolina Rules of Evidence. Thus, we find no merit in defendant's contention.

Defendant had a fair trial, free from prejudicial error.

No error.

Judges WELLS and MARTIN concur.